[No. 30097. Department One. April 17, 1947.]

THE STATE OF WASHINGTON, *Respondent*, v. CATER'S MOTOR FREIGHT SYSTEM, INC., *Appellant*.[1]

[1]Reported in 179 P. (2d) 496.

*Charles P. Lund* and *Brodie & Brodie,* for appellant.

*The Attorney General* and *Stanbery Foster, Assistant,* for respondent.

SCHWELLENBACH, J.—This is an appeal from a judgment rendered in the sum of five hundred dollars and costs, in favor of respondent against appellant. The case was heard upon an agreed state of facts.

The Cater's Motor Freight System, Incorporated, (herein-

after called Cater's) was for several years prior to September 11, 1944, a common carrier of freight and a holder of common carrier permit No. 46 issued by the department of public service of the state of Washington (hereinafter called the department), under the provisions of chapter 184, p. 883, Laws of 1935, as amended (Rem. Rev. Stat., Vol. 7A, § 6382-1 [P.P.C. § 281-1] *et seq.*), and was subject to, and was regulated by the department.

During this period, the department had promulgated rules and regulations governing motor freight carriers, among which was Rule 45 (g), which reads as follows:

"Every common carrier receiving property for shipment accompanied by a shipper's invoice showing the amount to be collected on delivery (C.O.D.) upon collection of this amount from consignee shall within 5 days remit to the shipper or to the originating carrier, and the originating carrier shall within 5 additional days remit to the shipper the amount so collected, excluding Sundays and holidays."

It is admitted and agreed that Cater's was required by law to observe the foregoing rule.

On July 1, 1944, the Fruit Delivery Freight Lines, Incorporated (hereinafter called Fruit Delivery), originated a shipment of one carton of washing machine parts in Seattle for the Appliance Parts and Service Company, as shipper, consigned to Fred S. Bunch, Kennewick, Washington. Fruit Delivery undertook to collect from the consignee, on behalf of the shipper, funds in the amount of $42.45, designated as c.o.d. funds. Fruit Delivery transported the shipment to Yakima and there delivered it to Cater's, who in turn delivered it to the Pasco Transfer Company, who delivered it to Bunch, the consignee, and collected the $42.45 and remitted the same to Cater's.

Similar transactions were had (all originating from Fruit Delivery) on July 8, 1944, on a shipment to Pioneer Iron Works, Kennewick, on which $190.99 was collected; July 17, 1944, to R. J. Schultz, Pasco, on which $42.24 was collected; June 23, 1944, to United Builders' Service, Pasco, on which $263.05 was collected; and on June 30, 1944, to Bills Place, Pasco, on which $306.24 was collected.

These total collections amounted to $844.97. Cater's did not remit this amount to Fruit Delivery because its books reflected an amount in excess of the above sum then owing to it by Fruit Delivery, and it therefore credited this sum to Fruit Delivery's account. After deducting the amount of these c.o.d. funds, Cater's books showed a balance of $265.30 due from Fruit Delivery, which disputed Cater's records in their entirety.

Effective September 11, 1944, an order was issued by the department authorizing the transfer of Cater's permit to C. Paul Sandifur and Charles H. Sandifur. Prior to the issuance of the order, the department required Cater's and the Sandifurs to agree to deposit with the Spokane branch of the Seattle-First National Bank the sum of seven thousand dollars. This fund was to be disbursed on the joint order of Cater's and a representative of the department in payment of all claims existing, or thereafter arising, against Cater's on account of any liabilities or c.o.d. shipments, or for any other claim by shippers. The department, through its representative, made demand on Cater's to disburse from this fund the sum of $844.97, in payment of these c.o.d. claims, but Cater's disregarded the demand, in view of its dispute with Fruit Delivery.

On October 11, 1944, the department issued NOTICE OF PENALTIES INCURRED AND DUE FOR VIOLATION OF LAW AND RULES AND REGULATIONS OF MOTOR FREIGHT CARRIERS, as authorized in § 21, chapter 166, p. 637, Laws of 1937 (Rem. Rev. Stat., Vol. 7A, § 6382-31 [P.P.C. § 281-67]), which notice showed a penalty of five hundred dollars. On November 15, 1944, Cater's filed an application for mitigation, which was denied December 7, 1944.

This amount remaining unpaid, on April 12, 1945, the state of Washington, through the attorney general, filed the complaint in this action, alleging in detail each of the transactions hereinbefore mentioned. By answer, the defendant denied liability as to each of the transactions, and as an affirmative defense, alleged that, at the times alleged, Fruit Delivery had money in its possession belonging to defendant which it refused to credit to the account of defendant.

Defendant, as a further defense, alleged that, upon the entry of the order of the department on September 11, 1945, permitting the transfer of its certificate to the Sandifurs, defendant ceased to be a common carrier, and the department had no right, authority, or jurisdiction to assess any penalties against the defendant.

Three questions are raised in this appeal: that the action of the department was in violation of the due process clause of the state constitution; that the department is estopped because it had insisted upon the fund of seven thousand dollars being deposited for the benefit of any claims of shippers; and that the department had lost jurisdiction over appellant at the time the penalty was imposed.

Art. I, § 3, of the state constitution provides:

"No person shall be deprived of life, liberty, or property without due process of law."

Rem. Rev. Stat., Vol. 7A, § 6382-31, provides:

"In addition to all other penalties provided by law every 'motor carrier' subject to the provisions of this act and every officer, agent or employee of any such 'motor carrier' who violates or who procures, aids or abets in the violation of any provision of this act or any order, rule, regulation or decision of the department shall incur a penalty of one hundred dollars for every such violation. Each and every such violation shall be a separate and distinct offense and in case of a continuing violation every day's continuance shall be and be deemed to be a separate and distinct violation. Every act of commission or omission which procures, aids or abets in the violation shall be considered a violation under the provisions of this section and subject to the penalty herein provided for.

"The penalty herein provided for shall become due and payable when the person incurring the same receives a notice in writing from the department describing such violation with reasonable particularity and advising such person that the penalty is due. The department may, upon written application therefor, received within fifteen days, remit or mitigate any penalty provided for in the section or discontinue any prosecution to recover the same upon such terms as it in its discretion shall deem proper and shall have authority to ascertain the facts upon all such applications in such manner and under such regulations as

it may deem proper. If the amount of such penalty is not paid to the department within fifteen days after receipt of notice imposing the same or application for remission or mitigation has not been made within fifteen days after violator has received notice of the disposition of such application, the attorney general shall bring an action in the name of the State of Washington in the superior court of Thurston County or of some other county in which such violator may do business, to recover such penalty. In all such actions the procedure and rules of evidence shall be the same as an ordinary civil action except as otherwise herein provided. All penalties recovered under this act shall be paid into the state treasury and credited to the public service revolving fund."

The department, pursuant to its authority to prescribe rules and regulations, had adopted Rule 45 (g), hereinbefore quoted.

The agreed statement of facts set forth that it was admitted and agreed that Cater's was required by law to observe that rule.

Rem. Rev. Stat., Vol. 7A, § 6382-21 [P.P.C. § 281-47], provides:

"The department may, under such rules and regulations as it shall prescribe, require any common carrier to file a surety bond, or deposit security, in a sum to be determined by the department, to be conditioned upon such carrier making compensation to shippers and consignees for all money belonging to shippers and consignees, and coming into the possession of such carrier in connection with its transportation service. Any common carrier which may be required by law to compensate a shipper or consignee for any loss, damage or default for which a connecting common carrier is legally responsible shall be subrogated to the rights of such shipper or consignee under any such bond or deposit of security to the extent of the sum so paid."

■ It will thus be seen that one of the duties imposed upon the department was the protection of shippers who placed property with carriers for transportation over the highways of the state, the charges for such property to be collected on delivery. In order to enforce this duty, the state had the right to impose penalties upon the carriers for the violation of regulations to be promulgated by the depart-

ment, provided the imposition of such penalties did not deprive the carriers of due process of law.

"Recognition of the rule that a person shall not be deprived of life, liberty, or property without an opportunity to be heard in defense of his right is of ancient origin, being older than written constitutions, and having been interwoven in the common law long prior to the adoption of the Magna Carta. The rule is founded on the first principals of natural justice, and is the foundation of the constitutional guaranties of due process of law." 16 C. J. S. 1145, Constitutional Law, § 568 (a).

■ The purpose of the constitutional guaranty of due process of law is to protect the individual from the arbitrary exercise of the powers of government. However, if a statute provides penalties for noncompliance with an administrative order, and such penalties are not in such amounts as to be prohibitive, and a reasonable opportunity is given to test such penalties in a proper hearing, due process has not been defeated.

"The imposition of severe or excessive penalties may violate the due process guaranty, especially if access to the courts to test the constitutional validity of a commission's orders is denied, if the right of review actually given is one of which a carrier may avail itself only at the risk of having to pay such penalties if the order is found to be valid, or if the penalized acts had the supposed sanction of the law. A reasonable penalty will be sustained. A state, however, has power to impose a punishment heavy enough to secure obedience to administrative orders of a state commission after they have been found to be lawful and to impose a penalty for acts of disobedience committed after ample opportunity to test the validity of such orders and failure to do so." 12 Am. Jur. 309, Constitutional Law, § 617.

In *St. Louis-San Francisco R. Co. v. State*, 182 Ark. 409, 31 S. W. (2d) 739, the town of Bay established a street across the railroad company's track. Later it gave notice to the company to construct a crossing. The twenty days required by the notice having elapsed, the prosecuting attorney brought suit to enforce the provisions of § 8486, providing for a penalty of not less than one hundred dollars, nor more than two thousand dollars, for failure or refusal

to construct a crossing, and for five dollars for every day such refusal should continue. The court found the penalty of one hundred dollars, and also found that 189 days had elapsed since the notice to construct the crossing, and judgment was rendered for one hundred dollars and for the further penalty of five dollars per day for 189 days, making a total of one thousand forty-five dollars. In upholding this judgment, the court said:

"In the statute under consideration in the case at bar there is no dependence upon a showing of extrinsic facts that may affect its validity. There is no command of an 'unascertained quality or of disputable and uncertain legality.' Here is a power expressly and in unmistakable terms conferred on the city council to lay out the streets; the duty, in equally express terms, imposed upon railroads to construct crossings on such streets over its roadbed and tracks, a reasonable time being given to make such construction after notice, and for a willful failure to comply with the plain legislative mandate a penalty fixed which in no wise can be said to be confiscatory. We therefore think the cases cited by counsel for the appellant have no application. It cannot be questioned that the State may impose penalties to compel obedience to its mandates, and that the due process clause of the Federal Constitution has no power to override the power of the State to establish all regulations that are reasonably necessary to secure the health, safety and general welfare of the community and to enforce same by the imposition of reasonable penalties, and all property rights are held subject to the fair exercise of such power."

"It would seem that due process of law in respect of regulations imposed on common carriers requires notice of the special burden or duty which the regulating body seeks to impose and an opportunity to be heard on the rightfulness of the exactions. However, it also appears that there is no necessity that the statute under which the regulatory body acts shall expressly provide for notice, nor is notice required for a hearing before the adoption of regulations affecting it, at least where existing statutes afford a right to resort to the courts by an action to suspend or set aside a regulation. Due process, it has been held, is afforded a carrier if there is an opportunity for it to be heard at any time before judgment is entered." 16 C. J. S. 1467, Constitutional Law, § 698 (3).

■ In its final analysis, if a person has his day in court, he has not been denied due process of law.

■ With these rules in mind, let us examine the record. Appellant, during the months of June and July, 1944, received five different shipments, for which it collected and failed to remit. This was clearly in violation of Rule 45 (g). When the attorney general commenced his action to collect the penalties, each of the five transactions was particularly alleged. In its answer, the five transactions were particularly denied. Each of these transactions was at issue, and before the state could recover, each transaction had to be proved. Appellant was given its day in court, and it was not denied due process of law.

■ When appellant transferred the certificate to the Sandifurs, the department required it to deposit seven thousand dollars in the Spokane bank. This fund was to be used in payment of all claims existing, or thereafter arising, against Cater's on account of any liability for c.o.d. shipments or for any other claims by shippers. The department had the right, and it was its duty, under § 6382-21, *supra*, to so protect the shippers. But this fund was exclusively for the benefit of the shippers, and the department had no right to look to this fund for the collection of any penalties. The department demanded of the appellant that it pay these claims out of these funds, and it was only after the refusal of the appellant to comply with such demand that the department exerted its power of penalty under the statute. Its insistence upon the establishment of the seven-thousand-dollar fund did not estop the department from imposing the penalty.

■ It is contended that the department had lost jurisdiction over the appellant at the time the notice of penalty was given. The notice was given October 11, 1944, and the order approving the transfer was issued September 11, 1944. It is claimed that on October 11, 1944, appellant was not a " 'motor carrier' subject to the provisions of this Act." But it should be noticed that the violations occurred, under the statute, five days after July 1, July 8, July 17, June 23, and June 30 (the dates of delivery), all in 1944. Each of these

violations constituted a separate and distinct offense. When the violations occurred, the offenses were committed.

It is true that, at the time the notice was given on October 11, 1944, appellant was not then a common carrier, to the extent that it had the right to transport goods over the highways of this state. However, by requiring the fund of seven thousand dollars to be set up, to be disbursed jointly with the appellant, the department retained jurisdiction over the appellant until the claims of shippers were paid in full, to the amount of the fund. By the retention of jurisdiction, the department had the right to exert all powers granted by statute necessary for the protection of shippers who had previously transacted business with appellant.

We find no error appearing in the record, and the judgment of the trial court will be affirmed.

MALLERY, C. J., MILLARD, SIMPSON, and ABEL, JJ., concur.

