[No. 43143.    En Banc.    April 17, 1975.]

YAKIMA COUNTY CLEAN AIR AUTHORITY, *Appellant*, v. GLASCAM BUILDERS, INC., *Respondent.*

*Richard C. Smith* and *David A. Thorner* (of *Smith, Scott & Hanson*), for appellant.

*Frank J. Falk, Jr.* (of *Walters, Whitaker & Finney*), for respondent.

*Slade Gorton, Attorney General, Charles B. Roe, Jr., Senior Assistant,* and *Wick Dufford, Assistant,* amicus curiae, on behalf of Department of Ecology.

WRIGHT, J.—This action raises questions as to the constitutionality of portions of the Washington Clean Air Act.

The Yakima County Clean Air Authority, the appellant herein, is a duly established air pollution control authority, operating under the authorization contained in RCW 70.94.053 *et seq.* It has the powers of a municipal corporation, including the right to maintain actions in its own name (RCW 70.94.081) and to enact ordinances, resolutions, rules, and regulations.

Appellant, acting through its board of directors, adopted consolidated regulation No. 1, which largely duplicates the Washington Clean Air Act. Because of the similarity of the regulation and the act, the challenges to the provisions of each will be discussed together.

In November 1972, the control officer of appellant levied a $250 penalty upon respondent. No administrative action was taken by respondent who refused to pay the penalty. On April 6, 1973, this action was instituted to collect the

penalty. The Superior Court entered a summary judgment of dismissal upon the ground that consolidated regulation No. 1 and the statute (RCW 70.94.431) were unconstitutional. This appeal followed.

Three questions were presented to the Superior Court and by this appeal. (1) Is the power to enact ordinances, resolutions, rules and regulations an unconstitutional delegation of authority? (2) Is the administrative penalty provision of RCW 70.94.431 and section 7.01 of consolidated regulation No. 1 a violation of due process? and (3) Was respondent required to exhaust its administrative remedies?

■ We shall first consider the question of exhaustion of administrative remedies. The rule is well established that one claiming a constitutional right as a defense can proceed directly to assert that right in a judicial proceeding. There are several sound reasons for this rule. An administrative tribunal is without authority to determine the constitutionality of a statute, and, therefore, there is no administrative remedy to exhaust. The administrative remedy is established by the same statute which is being challenged and recourse to an administrative remedy would put the respondent in the position of proceeding under the statute which it seeks to challenge.

The rule is well stated in 2 Am. Jur. 2d *Administrative Law* § 599 (1962) wherein it is said:

[I]n regard to enforcement proceedings it has been held that a defense of unconstitutionality of the statute providing the administrative procedure is not precluded by failure to exhaust appeal procedures, and that where the jurisdiction of the court has not been withdrawn by statute, the doctrine of exhaustion of administrative remedies is wholly misapplied when invoked against one not seeking equitable relief but merely defending himself against a regulation or order asserted to be invalid.

The question of delegation of authority will next be considered. The appellant is a municipal corporation and the authority of municipal corporations to enact ordinances is

clearly recognized. *American Fed'n of Teachers v. Yakima School Dist. 7*, 74 Wn.2d 865, 447 P.2d 593 (1968).

■■ A more serious problem is whether the statute and the regulation contain sufficient guidelines for the exercise of the authority delegated to the control officer. The challenged provision is stated substantially the same in RCW 70.94.431 and in consolidated regulation No. 1, § 7.02.

The requirements may be in general terms when the subject matter will not admit of more specific standards. The penalties must be within normally acceptable limits. This, accompanied by procedural safeguards which control arbitrary administrative action, provides a constitutionally permissible delegation. *Rody v. Hollis*, 81 Wn.2d 88, 500 P.2d 97 (1972).

The leading modern case upon the subject is *Barry & Barry, Inc. v. Department of Motor Vehicles*, 81 Wn.2d 155, 159-61, 500 P.2d 540 (1972), in which this court said:

We are convinced that these two conditions are met in the instant case, and that the challenged delegation of legislative power is valid and constitutional.

We are convinced and have no hesitancy in saying that the strict requirement of exact legislative standards for the exercise of administrative authority has ceased to serve any valid purpose. In addition to lacking purpose, the doctrine in several respects impedes efficient government and conflicts with the public interest in administrative efficiency in a complex modern society.

First, by preventing the working out of certain administrative policies at the administrative level on a case-by-case basis, the doctrine frustrates the efficient operation of the appropriate governmental processes. The human intellect is weakest when dealing with abstraction and generality, strongest when considering narrow, concrete, and particular problems. Therefore, the best way to work out policy is often for the legislative body to avoid generalization and to assign to an administrative agency the task of working out such policy on a case-by-case basis. 1 K. Davis, *Administrative Law Treatise* § 2.08 (1958). We are convinced that in the instant case the legislature, after defining his function in general terms, entrusted the director of the Department of Motor Vehi-

cles with full authority and responsibility for appropriate action to consummate legislative policy, reasoning that as a common sense and practical matter, the director would be more capable than the legislature of formulating reasonably appropriate standards for the approval of employment agency fees, based on his case-by-case experience with the contracts presented to him for approval.

Second, requiring the legislature to lay down exact and precise standards for the exercise of administrative authority destroys needed flexibility. Normally, the legislature meets only biennially. It does not have the opportunity to adopt a fee schedule and then alter it periodically to meet the changing needs of employment agencies and the public as revealed by administrative experience. In addition, it seems probable that various economic factors would affect any meticulously prescribed legislative standards, and it is doubtful that such standards could be attuned to coincide with these factors on a biennial basis.

Finally, a strictly construed standards doctrine is logically unsound and legally meaningless. The needs and demands of modern government require the delegation of legislative power without *specific* guiding standards. In attempting to satisfy requirements of precise standards, the courts have been forced to rely on vague adjectives of generality such as "reasonable" or "appropriate." We think that it is time to abandon the notion that the presence or absence of vague verbalisms like "public interest" or "just and reasonable" make all the difference between valid legislation and unlawful delegation. The possibility of basing the decision as to the constitutionality of a statute on the existence or nonexistence of such vague standards leads to the undesirable result that a particular delegation is more likely to be valid if it is attached to governmental action of which the reviewing court approves than if it authorizes action the court considers unwise.

An earlier case to the same effect was *State v. Cater's Motor Freight Sys. Inc.*, 27 Wn.2d 661, 179 P.2d 496 (1947). ■ Respondent also contended the statute and the ordinance were unconstitutional because of permitting a range of penalties for the same offense. This differs from *Olsen v. Delmore*, 48 Wn.2d 545, 295 P.2d 324 (1956), for there the prosecuting attorney was given discretion to charge the

same act either as a felony or as a gross misdemeanor. The holding of *Olsen* was limited to that situation by *State v. Boggs*, 57 Wn.2d 484, 358 P.2d 124 (1961) and *State v. Blanchey*, 75 Wn.2d 926, 454 P.2d 841 (1969), wherein it was held a range of punishment was constitutionally permissible.

Here, the objection is that a penalty can be either criminal, or civil, or both. One of the most common instances of the imposition of civil or criminal penalties, or both, is in the enforcement of statutes relating to internal revenue, which has been approved by *Helvering v. Mitchell*, 303 U.S. 391, 82 L. Ed. 917, 58 S. Ct. 630 (1938). We hold it is constitutionally permissible to provide for civil or criminal penalties, or both, for the same act. Herein, the procedure does provide for due process. The statute and the ordinance are substantially similar. A notice is served. The effect of the notice is somewhat similar to the effect of service of a summons in a civil action. The person served is given a period of 15 days within which to request a hearing before the Air Pollution Control Hearing Board. In the interim, the collection of the fine does not take place, and the collection is deferred until after the hearing. There is, thus, no deprivation, even temporarily, without a hearing. After that the collection of the fine takes place in a civil action in the superior court. There is adequate opportunity to be heard.

What the statute herein provides is well within the requirements for due process as set forth in *Flory v. Department of Motor Vehicles*, 84 Wn.2d 568, 527 P.2d 1318 (1974); *Goldberg v. Kelly*, 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970); *Cuddy v. Department of Pub. Assistance*, 74 Wn.2d 17, 442 P.2d 617 (1968).

Respondent places great reliance upon *United States Steel Corp. v. State*, 65 Wn.2d 385, 397 P.2d 440 (1964). That case is readily distinguishable from the instant case. Further, it is readily apparent that judicial viewpoint upon the problem of delegation has undergone a substantial change in the 11 years since that case was decided.

A history of the legislation involved in that case is contained on page 387 of the opinion. Particularly significant is the change wrought by the 1949 legislature when the words *"shall* add thereto interest" were changed to *"may* add thereto interest." (Italics ours.) (Laws of 1949, ch. 228, § 20) The change left little doubt of a clear legislative intention to make the addition of interest discretionary with the Tax Commission (now the Department of Revenue). In that act, the amount of the interest ("not more than six per cent (6%) per annum") was discretionary, and after the 1949 amendment, whether any interest at all was charged was determined by the commission.

In the *United States Steel* case, the court said at page 389:

> In a well-considered oral opinion, the trial court [per the Honorable Warner Poyhonen] pointed out that
>
> ". . . there cannot be equality before the law unless there are general laws that apply to everyone similarly situated.
>
> "I think it is possible to have a government which is or becomes despotic, but I think our forefathers felt that there was no hope for a nation of free people unless it was based on a government of law. Government of men is, by its very nature, despotism. There is no hope for a free society under the philosophy of a government of men."
>
> ". . . it must be frustrating . . . for a taxpayer to deal with a branch of his government where he is not able to find anywhere in writing the rules and regulations that prescribe how it came about that he was assessed a penalty for interest and why someone else was not."

(Footnote omitted.)

When *United States Steel Corp. v. State, supra,* was decided the rule was generally as stated therein. During the interim (1964-75) there has been a significant change in attitude toward the delegation of legislative authority. That change is well stated in *Barry & Barry, Inc. v. Department of Motor Vehicles, supra,* and in particular, in the portion thereof which is hereinbefore quoted (pp. 159-61).

In the instant case there *shall* be a penalty. The area of discretion with the control officer is as to whether the penalty be civil or criminal, and, if civil, the amount. As was pointed out hereinbefore, the discretion of a civil or a criminal penalty, or both, has been upheld. The discretion as to amount is not significantly different from that exercised traditionally by courts in fixing the amount of fines. We, therefore, hold that there is nothing constitutionally impermissible in the procedure involved herein.

For the reasons stated, the judgment of the trial court must be, and is, hereby reversed.

STAFFORD, C.J., and FINLEY, ROSELLINI, HUNTER, HAMILTON, UTTER, and BRACHTENBACH, JJ., concur.

FINLEY, J. (concurring)—I concur in the views expressed in the majority opinion and have signed it. However, I feel impelled to make the following supplementary statement as to my own views on this matter. My primary concern is to emphasize that today, in contrast to some of our older decisions, there is a significantly different legal philosophy or perspective relative to the delegation of legislative powers.

In particular, two things need to be said concerning the decision in *United States Steel Corp. v. State*, 65 Wn.2d 385, 397 P.2d 440 (1964). First, the statute therein was totally discretionary, for it simply provided that in the event of a delinquent or deficient tax payment, the Tax Commission *"may add* thereto interest at the rate of not more than six per cent (6%) per annum . . ." (Italics mine.) *See* Laws of 1961, ch. 15, § 82.32.050. Thus, the administrative agency was given discretion both (a) as to *whether* any interest, *i.e.*, a penalty would be assessed; and (b) as to the amount of any interest, *i.e.*, penalty to be assessed. In the instant case, RCW 70.94.431 is mandatory and simply provides as follows:

> [A]ny person who violates any of the provisions of chapter 70.94 RCW or any of the rules and regulations of the department or the board *shall incur a penalty* in the form

of a fine in an amount not to exceed two hundred fifty dollars per day for each violation.

(Italics mine.) Thus, if there is a violation the statute allows *no discretion*; a penalty must be imposed. The only discretion which the agency has in the instant case is to establish the amount of the penalty. This factor alone would provide some foundation for distinguishing *United States Steel Corp.* from the instant case.

However, there is a *second* and *more fundamental aspect* to the *United States Steel Corp.* decision, *viz.*, it was decided prior to our decisions in *Rody v. Hollis*, 81 Wn.2d 88, 500 P.2d 97 (1972), and *Barry & Barry, Inc. v. Department of Motor Vehicles*, 81 Wn.2d 155, 500 P.2d 540 (1972). These decisions marked a profound and significant change in legal philosophy with respect to the delegation of legislative power to administrative agencies. The underlying concern of courts in scrutinizing delegations of power to administrative agencies is to prevent such agencies from arbitrarily exercising such grants of power. Originally, and for some time, up until a few years ago, judicial decisions sought to accomplish this desirable purpose or end by simply requiring that the legislature delineate so-called "standards" by which the administrative agencies ostensibly were to govern their actions relative to delegated legislative power. In retrospect, the effort was a dubious and unrealistic one. It might even be characterized today as judicial oversimplification of a very real, complicated and most important problem in the evolution of modern government.

As the practical need for administrative agencies expanded, the courts increasingly tended to uphold delegations of power which contained trite recitations of nebulous generalities which often were actually ineffectual as "standards." Gradually, it became recognized that arbitrary administrative action could best be prevented, channeled or controlled by examining the degree to which *procedural safeguards* are afforded rather than by requiring a state-

ment of so-called "standards." *See* 1 K. Davis, *Administrative Law* § 2.15 (1958). *Rody* and *Barry & Barry* marked the transition in Washington from the *"standards"* approach to the *procedural safeguards approach* with respect to assessing the validity of a delegation of power to an agency. In particular, and of primary importance, *Rody* clearly distinguished *United States Steel Corp.* This was on the basis that *it was the absence of adequate provisions for notice, hearing and a factual record which invalidated the delegation of legislative power* to the Tax Commission in the *United States Steel Corp.* case. The essence of *Rody* is that a delegation will be upheld if there are (1) adequate procedural safeguards; and (2) guidelines which state in *general terms* that which is to be done, and which set the normally acceptable limits of punitive or compensatory administrative action. The instant case must be analyzed in this framework.

First, there can be no question but that the extensive review provisions contained in the instant statutory pattern constitute adequate procedural safeguards against administrative-agency arbitrariness. The "control officer" of the local authority initiates the action by serving a written notice of penalty upon the violator. *No penalty* becomes final until the defendant has a full opportunity to be heard by an *independent tribunal.* To obtain such a hearing, the defendant simply files an "appeal" with the Pollution Control Hearings Board, which is composed of three persons. The *defendant has a choice* of requesting either a *formal or informal* hearing. The hearings board must make written decisions and prepare findings of fact in each case decided by it. In addition, an appeal can be taken from the decision of the board to the superior court. If the board holds an informal hearing, the defendant is entitled to de novo review in superior court; if the board holds a formal hearing, the review in superior court is to be held in accordance with the administrative procedure act. Further provisions are also made for appeals to the Court of Appeals and the

Washington Supreme Court. *See* RCW 43.21B. Clearly, this comports with the safeguards requirement of *Rody*.

Next, it is apparent from the statute that there are general guidelines indicating what is to be done. It is argued, however, that there are no explicit standards and that implicit standards will not suffice. This contention, however, disregards our recent unanimous decision in *Rody*, where in passing upon a similar contention, we observed that "the requisite standards can be gleaned directly and *by implication* from the legislative provisions themselves." (Italics mine.) *See Rody* at page 91. There were two significant features in the statute involved in *Rody*, to which the instant statute should be compared. First, in *Rody* the *purpose* for the award of damages was apparent, *viz.*, to compensate the complainant for the loss of the right to be free from discrimination in housing transactions. In the instant case, the purpose of the penalty is similarly apparent. It is not to compensate any particular individuals, since any penalties recovered go to the general treasury of the authority rather than to injured citizens. Rather, a fair reading of the statute indicates that the purpose is *to secure compliance* with the policies of the Washington Clean Air Act. Second, in *Rody* this court thought it "*clear by implication*" that the amount of the award was to be adjusted to accomplish the purpose of the statute. *Rody v. Hollis, supra* at 92. (Italics mine.) Similarly, in this case, it is clear by implication that the amount of the penalty should be adjusted to accomplish the purpose of the Washington Clean Air Act. This approach, inherent in *Rody* and the majority opinion in the instant case, is consonant with the fact that the legislature has traditionally delegated power to the courts to assess fines within legislatively established limits. As we stated in *Rody v. Hollis, supra* at 93:

Having concluded that the judicial power exercised by this tribunal was properly delegated to it, we can only conclude that the tribunal's power to fix the amount of the penalty is consistent with due process, since the exercise of similar power by courts of law is universal and

266

has been consistently upheld. *See Ohio ex rel. Lloyd v. Dollison*, 194 U.S. 445, 48 L. Ed. 1062, 24 S. Ct. 703 (1904); *State v. Smith*, 74 Wn.2d 744, 446 P.2d 571 (1968).

In short, *Rody* is indistinguishable from the instant case and must be followed or overruled. I would follow it.

For the reasons indicated, I concur in the majority opinion.