Barbara F. CALABI and George E. St. Gelais, Plaintiffs

and

Carol A. Landsman, Alan P. Biederman, John W. Young, Edward J. Kellyhouse, Eugene Woodworth, John J. Quinn, Jr., Gerald P. LeClair, John A. Terrien b/n/f William O. Terrien, Philip Manning, Richard C. Dolliver, Garry T. Hall, Stephen M. Roberts, Conrad Joseph Estivill, John Paul M. Abruscato, Charles J. Sargent, Brian Dole, Richard Railton, Marshall Freedland, Dennis J. Dwyer, Eric Brown, Blair Conner and James Doolan, Plaintiff-Intervenors,

v.

James E. MALLOY, Commissioner of the Vermont Department of Motor Vehicles, Individually and in his Official Capacity.

Civ. A. No. 75–264.

United States District Court,
D. Vermont.

Oct. 11, 1977.

Roger E. Kohn, Hinesburg, Vt., for plaintiffs.

Robert C. Schwartz, Asst. Atty. Gen., Montpelier, Vt., for defendant.

Before WATERMAN, Circuit Judge and HOLDEN and COFFRIN, District Judges.

COFFRIN, District Judge:

■ This is an action for declaratory and injunctive relief brought pursuant to 42 U.S.C. § 1983.[1] Plaintiffs challenge the constitutionality of 23 Vt.Stat.Ann. 671(c)[2] and 23 Vt.Stat.Ann. § 2205(c)[3] which authorize the defendant Commissioner of Motor Vehicles to suspend the Vermont motor vehicle operator's licenses of drivers who have committed traffic offenses or other offenses which the Commissioner has reason to believe may render the driver an unfit person to operate a motor vehicle. Because plaintiffs seek to enjoin the enforcement of state statutes on the ground that they are unconstitutional, a three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284.[4]

■ The court heard arguments on plaintiffs' motion for summary judgment on April 28, 1977. Although defendant did not formally move for summary judgment himself, he did file a brief in opposition to plaintiffs' motion for summary judgment. Because the arguments made in the brief would also serve to support a request for summary judgment in favor of the defendant, and because of the clear understanding of all parties and the court that the hearing was to result in a decision on the merits, we treat the case as if it had been presented to us on cross-motions for summary judgment. It is on that basis that we decide the case on its merits.

### The Facts

Plaintiffs Barbara F. Calabi and George E. St. Gelais and a large number of plaintiff intervenors[5] have all had their motor vehicle operator's licenses suspended by the defendant Commissioner pursuant to the

---

1. Jurisdiction is predicated on 28 U.S.C. §§ 1343(3), (4) and 1331(a).

2. 23 Vt.Stat.Ann. § 671(c) reads as follows:
   (c) Except as otherwise provided in this title, in his discretion, the commissioner may suspend for a definite time the license of an operator, or the right of an unlicensed person to operate a motor vehicle whenever such person has been convicted of an offense specified in this title or of any other offense, the commission of which he has reason to believe may involve the operation of a motor vehicle or may render the person guilty thereof an unfit person to operate a motor vehicle, but such suspension shall not be for a period in excess of the maximum term of imprisonment provided by statute for the offense involved.

3. 23 Vt.Stat.Ann. § 2205(c) reads as follows:
   (c) A defendant who commits a traffic offense, other than a weight violation, shall be fined not more than $100.00. In addition, the commissioner may suspend the operator's license or privilege to operate a motor vehicle for not more than 30 days.

4. 28 U.S.C. § 2281 was repealed, effective August 12, 1976. Pub.L. 94–381, § 1, 90 Stat. 1119. However, the repeal of § 2281 does not apply to any action commenced on or before that date, Pub.L. 94–381 § 7. This action was commenced by a complaint filed December 16, 1975. Thus, the constitutionality of the statutes in question must be decided by a three-judge court.

5. In an Interim Opinion and Order filed on May 26, 1977 we denied plaintiffs' request for class action certification and denied plaintiffs' motion for a preliminary injunction applicable to the class.

authority vested in him by 23 Vt.Stat.Ann. §§ 671(c) or 2205(c).[6]

While the circumstances surrounding the various plaintiffs' license suspensions vary, the gravamen of their complaints is the same. Plaintiffs contend that the statutes in question vest in the Commissioner the authority to suspend motor vehicle operator's licenses and to determine the duration of such suspensions in his sole discretion, unguided by legislative or formal administrative standards or by any requirement to provide the motorist with notice or an opportunity to be heard. Such a broad delegation of authority without procedural safeguards allegedly renders the Commissioner's suspension decision violative of the Due Process Clause of the United States Constitution. Furthermore, plaintiffs contend that §§ 671(c) and 2205(c) deny them equal protection of the laws because pre-suspension hearings are provided by the Commissioner for persons who have been convicted of traffic violations in other states, 23 Vt.Stat.Ann. § 671a(a),[7] or who the Commissioner has reason to believe are "improper or incompetent" to operate a motor vehicle, 23 Vt.Stat.Ann. § 671(a).[8]

Because the plaintiffs are so numerous and the claims of plaintiffs Calabi and St. Gelais are typical, their suspensions and the arguments they make in this case illustrate the context in which we have reached our decision.

Plaintiff Calabi held a valid Vermont driver's license when, on October 28, 1975, she was issued a uniform traffic ticket for speeding. On November 10, 1975 plaintiff Calabi pleaded *nolo contendere* to a speeding charge and paid a fine of approximately $30.00. On or about December 5, 1975 she received a written notice from the Department of Motor Vehicles informing her that her license would be suspended, effective December 9, 1975, for 15 days pursuant to 23 Vt.Stat.Ann. § 2205(c). That suspension notice indicated that plaintiff was "an improper person to operate motor vehicles." Thereafter, plaintiff Calabi managed to secure a postponement of that suspension for five days. In the notice of the postponement the language quoted above was crossed out. Plaintiff's suspension was further postponed until the present time by temporary restraining order granted by this court on December 31, 1975. Defendant's suspension of plaintiff's operator's license was based upon the fact that the conviction in question was her second moving violation conviction within six months. Plaintiff argues that she relies upon her motor vehicle operator's license to get to work and needs

---

**6.** The license suspensions of the plaintiffs have been enjoined pending our final disposition of this case.

**7.** 23 Vt.Stat.Ann. § 671a(a) reads as follows:

(a) The commissioner of motor vehicles may revoke or suspend the license of an operator or the right of an unlicensed person to operate a motor vehicle when the operator or person has been convicted of an offense by a court of any other state when the offense, if committed in Vermont, would authorize the commissioner to make the revocation or suspension, provided, however, that the commissioner may not order the revocation or suspension based upon any conviction of the operator in any other state until after notice and due hearing, if the person or operator of the motor vehicle requests such a hearing within ten days from notice by the commissioner; if no request for a hearing is made, the commissioner may revoke or suspend such license for the statutory period.

**8.** 23 Vt.Stat.Ann. § 671(a) reads as follows:

(a) In his discretion, the commissioner may suspend indefinitely or for a definite time, the license of an operator or the right of an unlicensed person to operate a motor vehicle upon not less than five days' notice. He may order the license delivered to him, whenever he has reason to believe that the holder thereof is an improper or incompetent person to operate a motor vehicle, or is operating improperly so as to endanger the public. If, upon receipt of such notice, the person so notified shall request a hearing, such suspension shall not take effect unless the commissioner, after hearing, determines that the suspension is justified. Not less than six months from the date of suspension and each six months thereafter, a person upon whom such suspension has been imposed may apply for reinstatement of his license or right to operate or for a new license. Upon receipt of such application, the commissioner shall thereupon cause an investigation to be made and, if so requested, conduct a hearing to determine whether such suspension should be continued in effect.

it for other usual necessities and amenities of daily life.

Defendant Malloy, in his capacity as Commissioner of Motor Vehicles, maintains an informal system for determining the length of time for which he will suspend operator's licenses under 23 Vt.Stat.Ann. §§ 671(c) and 2205(c). In a case such as plaintiff Calabi's—which involved a conviction for exceeding the speed limit within six months of a prior moving violation conviction—defendant suspends licenses for fifteen days.

Plaintiff St. Gelais held a valid Vermont driver's license and was employed full time as a bus driver when, on October 30, 1975, he pleaded *nolo contendere* to a charge of careless and negligent driving pursuant to 23 Vt.Stat.Ann. § 1091(a). He had originally been charged with driving while under the influence of intoxicating liquor. However, that charge was reduced by the Chittenden County States Attorney's office to careless and negligent driving. On November 24, 1975 plaintiff St. Gelais was notified in writing that his motor vehicle operator's license was being suspended in accordance with 23 Vt.Stat.Ann. § 671(c) for a period of forty-five days. Plaintiff St. Gelais' suspension has also been postponed by our temporary restraining order. It is self-evident that a forty-five day suspension of the operator's license of a person engaged as a full-time bus driver would work a considerable hardship on that person in addition to the hardship any driver would face incident to the loss of the right to drive.

Under the defendant's informal system for determining the duration of suspensions, the usual suspension for conviction of careless and negligent driving is for fifteen days if the motorist has not been convicted of a moving traffic offense within the previous six months. However, if the motorist is *charged* with driving under the influence of intoxicating liquor, and that charge is reduced to careless and negligent driving, the defendant suspends the individual's license for forty-five days.

As the court has ascertained it from the pleadings, memoranda and arguments of counsel, the *modus operandi* of the defendant in suspending an operator's license is as follows:

When a motorist is ticketed for violating the traffic laws, he is given written instructions as to whether or not he is required to personally appear in court to answer the charges against him. The instructions are printed on the front of the Vermont Traffic Citation which is issued by the police officer. On the front of each ticket is printed in bold capital letters:

NOTICE TO VIOLATOR: READ BACK OF THIS SUMMONS CAREFULLY. BRING SUMMONS WITH YOU.

If the violator reads the back of the ticket, he is informed that if a personal appearance is not required, he may nevertheless appear at court and plead not guilty, in which case he is entitled to a jury trial, or he may plead guilty or *nolo contendere* and offer an explanation for the offense. His third alternative is to waive his rights to appear personally and to plead guilty or *nolo contendere* by filling out the form printed at the bottom of the ticket and sending it to the court along with the fine specified by the officer on the front of the ticket. Between these instructions and the form for pleading guilty or *nolo contendere* by mail is a box in which is printed in red capital letters the following message: [9]

IF YOU ADMIT YOU HAVE COMMITTED A TRAFFIC OFFENSE OR ARE JUDGED TO HAVE COMMITTED THE OFFENSE YOU WILL BE LIABLE TO A FINE, AND, IN ADDITION, YOUR OPERATOR'S LICENSE OR PRIVILEGE TO OPERATE A MOTOR VEHICLE OR YOUR CERTIFICATE OF REGISTRATION AND NUMBER PLATE ARE SUBJECT TO SUSPENSION AND REVOCATION AS PRESCRIBED BY LAW.

IF YOU ARE CONVICTED OF EIGHT (8) OR MORE MOVING VIOLATIONS WITHIN A FIVE (5) YEAR PERIOD, YOUR OPERATOR'S LICENSE

---

**9.** The inclusion of this language is mandated by 23 Vt.Stat.Ann. § 2203(d)(2).

WILL BE REVOKED FOR TWO (2) YEARS.

After the motorist appears or the ticket reaches the court, information is forwarded to the Department of Motor Vehicles. This information usually includes the name of the individual concerned, his address, the charge, the plea, whether or not the individual has been convicted, the fine imposed, and copies of the arresting officer's report. Additional information, such as comments by the judge, may occasionally be forwarded to the Department of Motor Vehicles. For offenses such as speeding which are prosecuted by means of the Vermont Traffic Citation, the only information regarding the case available to the agent of the Department who actually makes the suspension decision is the ticket itself.

The suspension decision is made by an employee of the Department of Motor Vehicles known as the Director of Driver Improvement. At all times relevant to this action, this position was held by one Laura Parker. Ms. Parker compares the record of each case with the informal guideline of the Department and notifies the individual involved of the suspension and its duration. She does not contact the motorist whose license is to be suspended for any information regarding the case. However, upon occasion she will contact the police officer who made the arrest.

It is agreed that Ms. Parker does not solicit any information pertaining to the extent of the hardship a given suspension will impose upon particular motorists. However, in the event that an individual writes or contacts her of his own volition, Ms. Parker will consider the communication in determining the fact or duration of any suspension. Furthermore, defendant will provide a motorist with an informal post-suspension hearing if the motorist requests one. Motorists are also entitled to appeal adverse decisions judicially under Rule 75 of the Vermont Rules of Civil Procedure. See discussion at I.B., *infra*.

As we have indicated, plaintiffs complain that due process and equal protection of the laws require a hearing on the question of the degree of hardship a suspension will cause for an individual. Defendant not only denies that such a hearing is constitutionally compelled, but suggests that the method presently used to determine suspensions "is the only proper way to treat all individuals equitably." [10]

The guidelines which the defendant utilizes in the suspension decision-making process are informal internal standards promulgated by the defendant and subject to change by him in his sole discretion. The guidelines are based on the relationship of the moving traffic violation at issue to the driver's prior record. Such a comparison yields the defendant's maximum and minimum suspensions under the circumstances of the case, as well as any special factors to be considered in the suspension process. [11]

Plaintiffs point out that the guidelines are not in all cases reasonable and their application is not always consistent. For example, a conviction for careless and negligent driving—fatality resulting may result in a suspension for up to five years. Subject only to that 5 year limit, the Commissioner suspends the motorist's license for one year for each person killed. The relationship between this sanction and the public policy underlying license suspensions is obviously tenuous. According to plaintiffs, the illogical approach of requiring suspension for one year for each fatality renders the guidelines no standard at all.

Plaintiffs also complain that the guidelines are not uniformly applied. For example, plaintiff-intervenor Carol Landsman

---

**10.** Item 14 of Admissions of defendant James E. Malloy, filed April 27, 1977, at 2.

**11.** Copies of the guidelines are attached as Exhibit A to Plaintiffs' Requests for Admissions, filed May 19, 1976. For each offense listed, the guidelines provide information under the following headings:

Maximum With No Record
Minimum With A Record
First Offense Maximum Time
Subsequent Offense Maximum Time
Factors Considered.

was convicted of two speeding violations six months and eleven days apart. Although the application of defendant's guidelines would suggest that her operator's license would not be suspended because the second offense was not within six months of the first, plaintiff Landsman's license was suspended for ten days. In suspending the license of a motorist whose two convictions occurred more than six months apart, defendant did not follow his own guidelines and did not give the motorist any opportunity to dispute his findings. These weaknesses in the defendant's comprehensive program for dealing with license suspensions, plaintiffs contend, render the current suspension procedure a denial of due process of law.

## I. *Due Process Claims*

### A. *Failure to Provide Hearings*

[3, 4] It is commonly understood that the cornerstone of due process is the opportunity to be heard prior to the adjudication of important rights. *Joint Anti-Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 162, 168–69, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J. concurring); *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). Because of the importance of the right to drive a car in our society, the Supreme Court has squarely held that the due process clause applies to the deprivation of a driver's license by the state.

> Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.

*Sniadach v. Family Finance Corp.*, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); *quoted in Dixon v. Love*, 431 U.S. 105, 112, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977).

The question raised in this case is whether the due process clause requires that Vermont provide a hearing to motorists who face possible suspension of their operator's licenses despite their having had the opportunity to appear in court and contest the charges against them. Plaintiffs acknowledge that they were apprised of their right to be heard on the question of their guilt or innocence of the offense charged, but contend that at no time were they afforded an opportunity to contest the imposition of a license suspension or to present evidence on the question of what should have been the appropriate length of the suspension.

Of course, plaintiffs' argument rests on the proposition that a suspension of their operator's licenses deprives them of a right which was not at issue in the guilt-determining process which culminated in their conviction of the traffic offense with which they were charged. They argue that neither a guilty or *nolo contendere* plea nor a conviction after trial constitutes an adjudication of the motorist's right to avoid a license suspension or the appropriate duration thereof. Therefore, before the Commissioner may suspend their licenses and deprive them of the right to drive, he must provide them with an opportunity to be heard above and beyond the opportunity they had to appear and defend themselves on the substantive offense. We disagree.

That the right to drive encompasses very important interests to most citizens today is beyond dispute, as is the constitutional requirement that a state provide due process of law before suspending that right. However, the manner in which the state provides such process as is due is not limited to any particular approach. "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972); *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). In the circumstances presented by these plaintiffs, we fail to see any deprivation of plaintiffs' right to due process of law because of the legislature's decision not to provide a separate pre-suspension hearing procedure.

Put another way, we believe that the opportunity to contest the actual traffic offense in court provides the motorist with a hearing which is sufficient to meet due process standards.

In this respect, we adhere to the views we expressed in *Wright v. Malloy*, 373 F.Supp. 1011 (D.Vt.), *aff'd*, 419 U.S. 987, 95 S.Ct. 297, 42 L.Ed.2d 261 (1974). In *Wright*, plaintiffs, each of whom had been convicted of a motor vehicle violation indicating fault arising out of an accident, sought to enjoin the defendant Commissioner of Motor Vehicles from suspending their operator's licenses for failure to furnish proof of financial responsibility to satisfy any claim for damages which might arise from the accident. We held that procedural due process as required by *Bell v. Burson, supra*, is satisfied by the opportunity granted the driver to contest his fault by contesting the violation with which he was charged. *Wright v. Malloy, supra*, 373 F.Supp. at 1019.

Because the suspension decision is, at least in the great majority of instances, simply a function of the guilt-determination process, and the motorist is given due warning of the possibility of license suspension on the Vermont Traffic Citation, the defendant is not required by the due process clause to provide a second hearing dealing only with the suspension issue. Admittedly, the ticket does not include any information regarding the statistical probability of suspension or its potential duration, but these are areas of punishment about which the motorist could readily inquire prior to entering his plea if he felt such information would be helpful in deciding how to proceed.

Plaintiffs, however, feel that the situation presented here is comparable to that portion of the case wherein we analyzed and declared unconstitutional 23 Vt.Stat. Ann. §§ 801(a)(4) and 802(a) insofar as they permitted the setting of security without a hearing to determine its amount. *Wright*

*v. Malloy, supra*, 373 F.Supp. at 1022. The instant case is easily distinguished. Here there is a statutory limitation on the duration of the suspension,[12] the court is a forum in which the motorist may contest the facts which give rise to the suspension and, if he desires to provide information or requests to be heard, the defendant will consider such information or provide him an informal, post-conviction hearing with respect to the terms of the suspension.

The recent case of *Dixon v. Love*, 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172 (1977), while not directly in point, is instructive and is sufficiently analogous to provide considerable support for our conclusions here. In *Dixon*, the Supreme Court reversed a three-judge district court which had declared unconstitutional an Illinois statute permitting the suspension and revocation of driver's licenses without a preliminary hearing upon a showing that the driver's conduct fell into certain enumerated categories. In upholding the statute, the Supreme Court relied heavily on the fact that the motorist had an opportunity for a full judicial hearing in connection with each offense upon which the suspension or revocation decision was based. The Court also found that the statute, by requiring the Secretary of State to provide a full evidentiary hearing *after* the suspension or revocation, *if the driver requests one, id.* at 109–10, 97 S.Ct. 1723, does permit a licensee eventually to "obtain all the safeguards procedural due process could be thought to require before a discretionary suspension or revocation becomes final." *Id.* at 112, 97 S.Ct. at 1727. As indicated above, the Vermont statute does not mandate a post-suspension hearing, but such a hearing is available to an aggrieved motorist at his request.

Equally important as its analysis of the Illinois statute in question in *Dixon* was the Court's consideration of the public policies which supported its decision to uphold that

12. The maximum term of suspension allowed under § 671(c) is the maximum term of imprisonment provided by statute for the offense involved. The maximum suspension allowed under § 2205(c) is 30 days.

law.[13] The Court there concluded that the public interest in highway safety and administrative efficiency would be impeded by the availability of a prior hearing in each case. These interests were "sufficiently visible and weighty," *id.* at 115, 97 S.Ct. 1723, to permit the state to continue to handle license suspensions and revocations as it had been doing prior to the decision of the three-judge court.

In the instant case, the statutes are somewhat different, but the public interests underlying their enactment are the same. Concededly, there will always be a chance that a pre-suspension hearing would result in the defendant's deciding to be lenient in particularly compelling cases of hardship. But that possibility does not provide an adequate reason to require the implementation of an across-the-board pre-suspension hearing system, with all its attendant administrative costs and delays in removing genuine dangers from the public highways. We are in full accord with the Supreme Court's conclusion regarding the utility of requiring such hearings.

> In this case appellee had the opportunity for a full judicial hearing in connection with each of the traffic convictions on which the Secretary's decision was based. Appellee has not challenged the validity of those convictions or the adequacy of his procedural rights at the time they were determined. . . . Since appellee does not dispute the factual basis for the Secretary's decision, he is really asserting the right to appear in person only to argue that the Secretary should show leniency and depart from his own regulations. Such an appearance might make the licensee feel that he has received more personal attention, but it would not

serve to protect any substantive rights. We conclude that requiring additional procedures would be unlikely to have significant value in reducing the number of erroneous deprivations.

*Dixon v. Love, supra,* 431 U.S. at 113–14, 97 S.Ct. at 1728 (footnote and citation omitted).

Accordingly, we hold that 23 Vt.Stat. Ann. §§ 671(c) and 2205(c) are not constitutionally infirm because of their failure to require a hearing prior to the suspensions of motor vehicle operator's licenses which those statutes permit.

### B. *Failure to Provide Standards*

■ Plaintiffs' second argument is that these statutes and the procedures administered by the defendant in suspending motor vehicle operator's licenses are fatally flawed because of a lack of "ascertainable standards" or legislative guidance within the scope of which the defendant must exercise his discretion. The exercise of administrative discretion, according to plaintiffs, requires that the agency promulgate ascertainable standards, *Holmes v. New York City Hous. Auth.,* 398 F.2d 262, 265 (2d Cir. 1968), which must be made available to the public. In the absence of such ascertainable standards, plaintiffs contend, the delegation of such broad authority as we find in §§ 671(c) and 2205(c) is constitutionally impermissible.

Defendant maintains that the informal guidelines which the Department applies to make its suspension decisions meet the test plaintiffs propose. He also relies on the fact that, upon request from anyone who has received notice of suspension, the Department will provide an informal hearing.

---

**13.** Recent decisions of the Supreme Court have demonstrated that the Court resolves the question of whether administrative procedures are constitutionally adequate by weighing the governmental and private interests that are affected.

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action;

second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Because there is also a possibility of judicial review of governmental actions, Vt.R.Civ.P. 75,[14] defendant believes that there are sufficient procedural safeguards if the Commissioner should abuse his discretion.

The guidelines established by the defendant are admittedly imperfect; at least one of them may even lack a solid rational basis.[15] Nonetheless, they are standards, and they are not nearly as imprecise as plaintiffs allege. In the first place, as we have already noted, the motorist is put on notice that his license may be suspended when he reads his citation. That notice informs him that his license is "subject to suspension and revocation as prescribed by law." [16] Because the suspensions authorized by 23 Vt.Stat.Ann. §§ 671(c) and 2205(c) are limited to maximum terms prescribed in the statutes,[17] the duration of suspensions in general is an ascertainable piece of information.

We have no doubt that standards or rules are most useful when the person whose conduct must conform to them or whose punishment is gauged by them knows what they are. Standards are weakened by generality and lack of enforcement. Furthermore, they will be most effective when they are applied even-handedly. *See United States v. Barbera*, 514 F.2d 294, 303 (2d Cir. 1975). It does not follow, however, that if the guidelines in question are not widely publicized or are not unerringly utilized, we must declare the statute under which they are promulgated unconstitutional. The purpose of defendant's internal guidelines is to insure that suspensions are imposed on the basis of relative culpability; the defendant must utilize the suspension tool for purposes ranging from specific deterrence of speeders whose prior records indicate that a mere "ticket" and fine did not teach the intended lesson, to ridding the highways of bona fide menaces whose continued operation of motor vehicles constitutes a threat to public safety. To take full advantage of the deterrent effect of license suspensions, and to further minimize the possibility of arbitrary application or error, publication and dissemination of the guidelines would be a logical and salutary step for the Commissioner to take; however, we are not prepared to hold that his failure to do so constitutes a denial of due process.

Because we find that the Commissioner's guidelines are reasonably specific and ascertainable and prescribe suspensions which are both within the statutory maximum and within normally acceptable limits, we hold that the statutory scheme does not unconstitutionally fail to provide standards for the exercise of administrative discretion. *See Yakima County Clean Air Auth. v.*

---

14. Defendant states in his memorandum of law that, "[i]n Vermont, a judicial review of governmental action is provided for by statute. See, 3 V.S.A. § 815; Vermont Rules of Civil Procedure (V.R.C.P.) 74 and 75." As a general assertion, this is correct. However, it is not so clear that all of these provisions would apply to a review of a decision by the defendant to suspend a motor vehicle operator's license. 3 Vt.Stat.Ann. § 815 provides for judicial review of persons aggrieved by a final decision by an agency in "any contested case." While § 814 would apply the provisions regarding contested cases to licensing decisions, § 816(b) specifically excludes from the coverage of § 814 "any and all acts, decisions, findings or determinations by the commissioner of motor vehicles." Because Vt.R.Civ.P. 74 supplies the procedure for taking an appeal authorized under 3 Vt. Stat.Ann. §§ 801–16, it would appear to be similarly inapplicable here. However, there is no such restriction imposed upon review of governmental action sought under Vt.R.Civ.P. 75, which is specifically aimed at providing for review of actions not appealable under Rule 74.

15. The court is unable to discern any rational basis for suspending a driver's license following a conviction of careless and negligent driving—fatality resulting for a period of one year for each person killed. Given that the number of passengers in another vehicle or the number of pedestrians in the path of a vehicle are not factors which the careless driver could control even if he wanted to, there is, at best, only the most tenuous deterrent or retributive basis for such a method of arriving at the term of the suspension.

16. *See* language reproduced from Vermont Traffic Citation, at text accompanying note 9 *supra*.

17. *See* note 12 *supra*.

*Glascam Builders, Inc.,* 85 Wash.2d 255, 534 P.2d 33, 34 (1975).

## II. *The Equal Protection Claim*

Plaintiffs' final argument is that the challenged statutes deprive them of equal protection of the laws since other statutory provisions provide pre-suspension hearings for Vermont licensees (a) who have been convicted of motor vehicle offenses in other states, 23 Vt.Stat.Ann. § 671a(a), and (b) who are deemed improper or incompetent to operate motor vehicles, 23 Vt.Stat.Ann. § 671(a).

As we had occasion to observe in *Wright,* the equal protection clause requires that statutory classifications have some rational basis. *See Wright, supra* at 1021; *James v. Strange,* 407 U.S. 128, 140, 92 S.Ct. 2027, 32 L.Ed.2d 600 (1972); *Rinaldi v. Yeager,* 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed.2d 577 (1966). The equal protection clause

> is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

*McGowan v. Maryland,* 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

If the two classifications here were based upon distinctions without any difference, the disparity of treatment might well violate the equal protection clause. But plaintiffs' position that the two classes are not different is untenable. The fact is that the differences between the class of persons

affected by §§ 671(c) and 2205(c) (such as plaintiffs herein), and those classes subject to §§ 671(a) and 671a(a) are not trivial. Defendant argues, for instance, that out-of-state courts are not compelled to supply the Vermont Commissioner of Motor Vehicles with *any* information, and, even if they do, the Commissioner "needs to be able to inquire further to deal with potential problems [such] as speed traps, a lack of uniform terminology, [and] selective enforcement."[18] This is surely a rational practical basis upon which the legislature could conclude that a hearing is necessary prior to suspending a Vermont motorist's license on the basis of an out-of-state conviction.[19] Neither of the classes of persons provided with pre-suspension hearings by §§ 671(a) and 671a(a) would have any opportunity whatsoever to be heard in Vermont if the hearings provided in these sections were not available. This is a considerably different situation than that which is faced by those who are convicted of traffic offenses in Vermont and enjoy the right to a full judicial hearing in Vermont on the facts underlying the charges against them.

Having found a rational basis for this statutory discrimination, we are compelled to uphold it. *See McGowan v. Maryland, supra* at 426, 81 S.Ct. 1101, 6 L.Ed.2d 393; *Wright v. Malloy, supra* at 1019.

## Conclusion

On the basis of the foregoing discussion, we find the statute in question to be constitutional. Therefore, plaintiffs' motion for summary judgment is denied. Judgment is hereby entered for defendant. The temporary restraining orders previously issued in this cause are hereby dissolved.

---

**18.** Defendant's Memorandum of Law, filed February 28, 1977, at 4–5.

**19.** In this regard, plaintiffs make passing reference to the full faith and credit clause of the Constitution. Apparently they suggest that, because Vermont officials must give full faith and credit to foreign judgments of conviction for traffic offenses, they must also subject such out-of-state offenders to the same sanctions which they would impose upon persons convicted of the same offense in Vermont. The merits of this argument need not be reached, however. There is no question here of defendant's failing to give out-of-state judgments full faith and credit. The only disparity in treatment at issue here arises out of the *procedure* which the Commissioner will utilize to arrive at an appropriate suspension term.