690 P.2d 839 (1984)
INDUSTRIAL COMMISSION OF the STATE OF COLORADO (Ex-Officio Unemployment Compensation Commission of Colorado), Sallie M. Fresquez, Blanche A. McCall and Susan M. Walsh, Petitioners,
v.
The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF ADAMS, Respondent.
INDUSTRIAL COMMISSION OF the STATE OF COLORADO; Fidelia E. Muniz, Isabel L. Archuleta, Pamela Duran (Culp), and Martha A. Rodriquez, Employees, Petitioners,
v.
The BOARD OF COUNTY COMMISSIONERS OF the COUNTY OF WELD, Respondent.
Nos. 82SC171, 82SC349.
Supreme Court of Colorado, En Banc.
November 5, 1984.
*841 Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Enforcement Section, Denver, for petitioners in No. 82SC349.
Thomas O. David, Weld County Atty., R. Russell Anson, Deputy County Atty., Greeley, for respondent in No. 82SC349.
J.D. McFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Robert C. Lehnert, Asst. Atty. Gen., Enforcement Section, Denver, for petitioners in No. 82SC171.
Kevin Maggio, Adams County Atty., Marsha Segal-George, Deputy County Atty., Brighton, for respondent in No. 82SC171.
NEIGHBORS, Justice.
We granted certiorari to review the decisions of the court of appeals in Board of County Commissioners of the County of Adams v. Industrial Commission, 650 P.2d 1297 (Colo.App.1982), and Board of County Commissioners of the County of Weld v. Muniz, 661 P.2d 1179 (Colo.App. 1982), setting aside orders issued by the Industrial Commission (Commission) granting unemployment benefits to Project Headstart[1] workers employed by Adams and Weld Counties. Because the cases present similar issues, they were consolidated for our decision. We reverse the judgments of the court of appeals in both cases.

I.

GENERAL BACKGROUND
To place these appeals in focus, it is necessary in this section I to trace the legislative, judicial, and administrative history which provides the factual and legal background that resulted in this litigation. In sections II (Adams County) and III (Weld County), we will first discuss the events leading up to the Commission's action in each case, summarize the order entered by the Commission and the decision of the court of appeals in each proceeding, and then address the merits of each appeal.
Under section 8-73-107(3)(a), 3 C.R.S. (1973 & 1983 Supp.), of the Colorado Employment Security Act (Act), an employee who performs services "in an instructional, research, or principal administrative capacity for an educational institution" is not eligible to receive unemployment compensation when not working between academic terms, if the employee has reasonable assurances of continued employment.[2] In Board of County Commissioners v. Martinez, 43 Colo.App. 322, 602 P.2d 911 (1979), the court of appeals held that this exclusion applied to Project Headstart workers employed by the Weld County Department of Human Resources. The court *842 reviewed the legislative history and adopted specific definitions of "institution" and "educational institution" in the context of the statute. The court of appeals based its holding on the educational aims of the Headstart Program, and on the fact that "[h]eadstart programs are run similarly to public school programs, following the regular school calendar for classes and vacation periods." Id. at 325, 602 P.2d at 913.
The Colorado unemployment tax system is part of a cooperative federal-state program, administered under the Federal Unemployment Tax Act (FUTA), 26 U.S.C. §§ 3301-3311 (1982). FUTA imposes a federal excise tax on employers to provide revenue which is used to pay unemployment compensation benefits, but allows a credit on this tax of up to 90 percent for payments made by employers to state unemployment programs which comply with federal requirements. Approved state programs are also eligible to receive federal grants that are used to defray operating costs.
Under 26 U.S.C. § 3304(a) and (c), the United States Secretary of Labor must annually review and certify each state unemployment program. Since the Secretary's finding of "nonconformity" with federal law would result in elimination of the tax credit and grant revenue, thereby causing a significant loss of federal funds to both the state and private employers, the General Assembly added the following provision to the Colorado Employment Security Act in 1977:
If any provisions [of the Act] are determined to be in nonconformity with federal statutes, as determined by the United States secretary of labor, the division is authorized to administer said articles so as to conform with the provisions of the federal statutes until such time as the general assembly meets in its next regular session and has an opportunity to amend said articles.
Ch. 91, sec. 13, § 8-70-108, 1977 Colo.Sess. Laws 463.
On July 17, 1980, the United States Department of Labor notified the state employment division that the court of appeals' interpretation of the Colorado Employment Security Act in Martinez, excluding Headstart workers employed by counties from between-terms unemployment coverage, was inconsistent with federal law.[3] In response to this finding of nonconformity[4] and in reliance on the 1977 amendment to section 8-70-108, the Commission promulgated Emergency Rule 2.7, which provided in pertinent part:
2.7.2 Purpose: The purpose of this regulation is to bring the law of Colorado with respect to between terms denial of benefits for Head Start employees into conformity with the Federal interpretation of the law with respect to between term denial of benefits for Head Start employees.
2.7.3 Application of C.R.S.1973, 8-73-107(3), to institutions operating Head Start Programs. No institution, organization, or other entity shall be considered an "educational institution" within the meaning of C.R.S.1973, 8-73-107(3) on the basis that the institution, organization, or other entity operates or sponsors a Head Start Program except when that institution, organization, or entity is determined to be an "educational institution" on a basis other than the operation or sponsorship of a Head Start Program....
2.7.4 Basis for exclusion of Head Start Programs. Head Start programs ... are intended to provide to disadvantaged children such services as meet their physical, social, medical, emotional and nutritional needs. Services which meet the educational needs of the disadvantaged *843 children are incidental to the needs set forth above. Only where the services of a Head Start Program are provided by an otherwise established "educational institution" in accord with the criteria set forth in 2.7.3 above will employees of the Head Start Program be deemed to be subject to the between terms denial provisions of the C.R.S.1973, 8-73-107(3).
Regulations Concerning Employment Security, Rule 2.7, 7 C.C.R. 1101-2 (1980) (adopted as an emergency regulation, made permanent 9/30/80).

II.

ADAMS COUNTY

A.
In December 1980, the Commission affirmed the decisions of a Division of Employment and Training referee concerning three Adams County Headstart Program workers who filed unemployment benefit claims for the summer recess following the 1979-80 school year. The Commission's final orders denied benefits through July 26, 1980, pursuant to the court of appeals' interpretation of section 8-73-107(3) in Martinez, but granted benefits under Emergency Rule 2.7 effective July 27, 1980.
The county appealed and the court of appeals set aside the award of benefits on the ground that Rule 2.7 was an effort by the Commission to overrule Martinez, and violated the separation of powers doctrine created by article III of the Colorado Constitution.[5] The court reasoned that the Commission's reliance on the "savings clause," section 8-70-108, as a delegation of legislative authority did not justify the promulgation of Rule 2.7, since even if the General Assembly had manifested an intent to overrule Martinez, it had no power to delegate to the Commission the authority to do so. Accordingly, the court held that the Commission's promulgation of Rule 2.7 was "ultra vires" because the Commission "had no constitutional power in either a legislative or a judicial capacity to overrule the decision of this court." Adams County, 650 P.2d at 1300.

B.
The petitioners first argue that the court of appeals lacked jurisdiction to review the Commission's order granting unemployment compensation to the three Headstart Program workers. Specifically, they argue that the court of appeals' decision was issued in violation of section 13-4-102(1)(b), 6 C.R.S. (1973), which provides that the court of appeals' jurisdiction to review lower court judgments does not include "[c]ases in which the constitutionality of a statute... is in question." We reject this position.
Section 13-4-102, 6 C.R.S. (1973 & 1983 Supp.), provides in pertinent part:

Jurisdiction. (1) Any provision of law to the contrary notwithstanding, the court of appeals shall have initial jurisdiction over appeals from final judgments of the district courts, superior courts, the probate court of the city and county of Denver, and the juvenile court of the city and county of Denver, except in:
....
(b) Cases in which the constitutionality of a statute, a municipal charter provision, or an ordinance is in question;
....
(2) The court of appeals shall have initial jurisdiction to review awards or actions of the industrial commission, as provided in articles 53 and 74 of title 8, C.R.S....
Section 8-74-107(2), 3 C.R.S. (1983 Supp.), states:
Actions, proceedings, or suits to set aside, vacate, or amend any final decision of the commission shall be commenced in the court of appeals within twenty (20) days....
Clearly, under section 13-4-102(1), the court of appeals is presently without jurisdiction to consider an issue involving the *844 constitutionality of a statute, municipal charter, or ordinance on appeal from a final judgment of a lower court. See McCamant v. City & County of Denver, 31 Colo. App. 287, 501 P.2d 142 (1972). However, section 13-4-102(2) vests initial and exclusive jurisdiction in the court of appeals to review the decisions of several statutorily created tribunals, including the Commission.
We do not read section 13-4-102 as a complete bar to the authority of the court of appeals to hear constitutional issues. Section 13-4-102(2) contains no exception to the jurisdiction of the court of appeals to review Commission cases in which the constitutionality of a statute is challenged. The only such exception is found in section 13-4-102(1), which applies to appellate review of the final judgments of district and other courts. See Matthews v. Industrial Commission, 627 P.2d 1123, 1126 app. A (Colo.App.1980).[6] We conclude that the court of appeals had jurisdiction to decide the constitutional issues raised in these appeals.

C.
The petitioners next argue that the court of appeals erred in relying on Martinez which they claim was incorrectly decided because it ignored critical distinctions between Headstart Programs and educational institutions, and failed to address the significant interplay in funding and administration between the state and federal statutes. We agree, and thus overrule Martinez and reverse the Commission's final orders to the extent that they were based on Martinez.
In construing a statute, courts have a duty to ascertain the legislative intent and give effect to such intent wherever possible. ITT Diversified Credit Corp. v. Couch, 669 P.2d 1355 (Colo.1983). Therefore, if the legislature intends that a state statutory scheme be administered in cooperation with and to conform to a concomitant federal enactment, the courts, in interpreting the state statute, should construe the state and federal statutes together to maintain institutional harmony. See 2A C.D. Sands, Sutherland Statutory Construction § 51.06 (4th ed. 1973); 76 Am.Jur.2d, Unemployment Compensation § 7 (1975). Cf. Annot., 139 A.L.R. 892 (1942) (collecting cases which hold that terms of the federal security act or judicial or administrative rulings thereunder are entitled to great weight in construing state unemployment compensation acts).
In the past, coordination between the federal and state unemployment compensation acts has not always been viewed as necessary or even desirable by this court. *845 See Brannaman v. Richlow Manufacturing Co., 106 Colo. 317, 104 P.2d 897 (1940); Park Floral Co. v. Industrial Commission, 104 Colo. 350, 91 P.2d 492 (1939); Industrial Commission v. Northwestern Mutual Life Insurance Co., 103 Colo. 550, 88 P.2d 560 (1939). Nevertheless, this court has recently recognized that modern state and federal unemployment compensation programs are "complementary." Herrera v. Industrial Commission, 197 Colo. 23, 593 P.2d 329 (1979).
In addition, this court and the court of appeals have held that where the provisions and purposes of a state statute parallel those of a federal enactment, federal authorities are highly persuasive. See People v. North Avenue Furniture & Applicance, Inc., 645 P.2d 1291 (Colo.1982) (federal decisions construing the Sherman and Clayton Acts are entitled to careful scrutiny in determining the scope of the Colorado antitrust statute); Lowery v. Ford Hill Investment Co., 192 Colo. 125, 556 P.2d 1201 (1976) (adopting federal interpretations of the Securities and Exchange Act of 1933 to construe similar language in the Colorado Securities Act); Sandefer v. Reynolds Securities, Inc., 44 Colo.App. 343, 618 P.2d 690 (1980).
However, the state unemployment compensation act does more than simply parallel the federal statutory scheme. As discussed above, the Colorado unemployment tax system is part of a cooperative federal-state program administered under the Federal Unemployment Tax Act, 26 U.S.C. §§ 3301-3311 (1982). Tax credits against an employer's federal tax liability are allowed to employers who pay into a state unemployment program which complies with federal requirements. In addition, federal grants which are used to defray the operating costs of the compensation program are available to approved state programs.
To insure that Colorado complies with the federal requirements and maintains the tax credits and administrative funding, the legislature intended that the state statute be interpreted and administered in conformity with federal authorities. This legislative intent was reflected in several statutory provisions enacted before Martinez was decided. See § 8-70-103(8)(f), 3 C.R.S. (1973) (definition of "employer"); § 8-71-106, 3 C.R.S. (1973) (federal statute to define some of the duties of the state employment service section, a part of the division of employment); § 8-72-109, 3 C.R.S. (1973) (state-federal cooperation in the form of rules, regulations, administrative methods, and standards as necessary to secure to the state all the advantages available under the provisions of the federal social security act); §§ 8-77-102 to -107, 3 C.R.S. (1973) (coordination between the federal and state unemployment programs in the transfer of funds); §§ 8-78-101 to -103, 3 C.R.S. (1973) (federal monies used in the establishment of the employment security administration fund). These provisions are in addition to the "savings clause," section 8-70-108, which expressly mandated conformity with the federal statutes.
Months before Martinez was decided, the United States Department of Labor published an official interpretation of the between-terms denial provisions in section 3304(a)(6)(A) of FUTA. See Department of Labor, Employment & Training Administration, Unemployment Insurance Program Letter 40-79 (Aug. 3, 1979). The letter stated that Headstart workers who were employees of an educational institution would be subject to the federal between-terms denial provisions, but that Headstart workers employed by groups which did not meet the criteria of educational institutions would still receive benefits. Id. This interpretation was more restrictive than the previous federal position which allowed all Headstart workers to claim unemployment compensation during the months between school terms. Id. The latter construction had consistently been followed by the state division of employment for more than ten years. Under the federal guidelines as followed by the state agency, the Headstart workers in Martinez would not have been *846 denied between-terms unemployment compensation.
It is clear that the court of appeals did not take the federal interpretation into consideration when it reached a contrary decision in Martinez. In its construction of the statute, the court neglected to effectuate the express intent of the legislature that the state statutes remain in conformity with the federal statutes in order to preserve the tax credits for employers and the administrative operating revenues. Finally, the court did not sufficiently defer to the agency's own long-standing administrative interpretation and application of the between-terms denial provision. See Smith v. Myron Stratton Home, 676 P.2d 1196, 1201 n. 4 (Colo.1984) (where a statute is capable of more than one interpretation, construction of a statute by administrative officials charged with its enforcement shall be given great deference by the courts).
On the basis of these considerations, we conclude that Board of County Commissioners v. Martinez was incorrectly decided, and hereby overrule that decision. We, therefore, reverse the Industrial Commission's decisions made pursuant to Martinez, denying benefits to the Adams County Headstart employees. By overruling the court of appeals' decision in Martinez, we do not reach the issues addressed by the court of appeals in Adams County, namely, whether the statutory "savings clause" is an unconstitutional delegation of law-making power or whether Rule 2.7 is a valid exercise of administrative authority. Rule 2.7 was enacted in response to Martinez and simply restated the federal position. Because the division, in carrying out the legislature's intent, had consistently conformed to the federal position since 1968, Rule 2.7 is properly characterized as mere surplusage.
Therefore, we reverse the decision of the court of appeals in Board of County Commissioners of the County of Adams v. Industrial Commission.

III.

WELD COUNTY

A.
In June of 1981, three Weld County Headstart employees filed claims for unemployment compensation. Another employee had earlier filed such a claim in June of 1980. A Division of Employment and Training deputy determined that each employee was entitled to full unemployment benefits. On appeal, a referee ruled that the four employees were entitled to unemployment compensation while on summer recess, pursuant to the provisions of Rule 2.7. The referee's decision was entered in one case on March 11, 1981, and in the other cases in August 1981. Findings of fact and orders upholding the referee's decision were entered by the Commission in October 1981. The final orders, affirming its award of unemployment compensation benefits to the claimants, were entered by the Commission in each case in November 1981. However, between the time the claims were filed and the Commission entered its final orders, the General Assembly amended section 8-73-107(3), 3 C.R.S. (1973 & 1983 Supp.),[7] effective July 1, 1981, to read in pertinent part:
For the purposes of this subsection (3), "educational institution" includes the Colorado school for the deaf and the blind; except that such term does not include a Headstart Program which is not a part of a school administered by a board of education because such Headstart employees are not subject to the same employment conditions as other employees of the school.
The court of appeals held that section 8-73-107(3) violated the equal protection clauses of the United States and Colorado Constitutions because it created an irrational classification in allowing those Headstart Program workers employed in county-administered programs to be eligible for unemployment compensation benefits between academic school terms, while denying *847 those benefits to Headstart workers employed in programs operated by school districts. Accordingly, the court reversed the grant of benefits to the Weld County employees.

B.
Petitioners first argue that the court of appeals lacked jurisdiction to determine the constitutionality of section 8-73-107 because all of the unemployment claims were filed before the effective date of the statute. We agree that the referee explicitly relied on Rule 2.7 and not on the statute in reaching his decisions.
However, the final orders of the Commission were issued in November 1981. The statute superseding Rule 2.7 became effective on July 1, 1981. The regulation, by virtue of section 8-70-108, became ineffective upon completion of legislative action governing the definition of an educational institution. The intent and effect of the regulation and the statute are the same: Employees of county administered Headstart programs are eligible for unemployment benefits while employees of school district administered programs are not. Therefore, we presume that the Commission based its final orders on the statutory provision in effect at the time of its decision.
Petitioners next argue that the court of appeals erred in finding that no rational basis existed for distinguishing between employees of county-run Headstart programs and other employees. They claim that there is a rational distinction between Headstart programs which are operated by school districts and those operated by other governmental entities because (1) the stated purpose of the amendment to 8-73-107 is that "Headstart employees are not subject to the same employment conditions as other employees of the school"; (2) the mere fact that all employees perform similar duties is not material; and (3) Colorado stands to lose significant federal funds if the statutory scheme is not brought into conformity with federal law.
In Colorado we recognize three standards of review for purposes of equal protection analysis. Austin v. Litvak, 682 P.2d 41, 49 (Colo.1984). Since neither a fundamental right nor a suspect classification is involved here, we need not consider either the "strict scrutiny" or the "intermediate review" test. Id. We will analyze this classification using the rational basis test.
Under the "rational basis" standard of review, disparate classes of persons may be treated differently without violating equal protection guarantees if the statutory classification has some rational basis in fact and bears a rational relationship to legitimate governmental objectives. Id.; People v. Velasquez, 666 P.2d 567 (Colo. 1983); Smith v. Charnes, 649 P.2d 1089 (Colo.1982). As we stated in Austin:
Our recent cases have made clear there are two separate and distinct prongs to the rational basis test. The first prong of the test has been formulated as requiring that "the classification is reasonable, not arbitrary," or that "the statutory classification has some rational basis in fact...." The second prong requires either that "the statutory classification... bears a rational relationship to legitimate state objectives," or that it be "reasonably related to a legitimate governmental interest." Regardless of the linguistic formulation of the test, we must conduct a "serious and genuine judicial inquiry into the correspondence between the classification and the legislative goals."
682 P.2d at 50 (citations omitted).
We agree that the General Assembly's statutory classification was based on rational differences in fact between Headstart employees of a county-administered program and Headstart employees of a school-administered program. Since Weld County failed to prove that the benefits enjoyed by the two classes are the same, it has not established the threshold predicate necessary to challenge the statutory classification. All Headstart employees perform duties only during the academic year. *848 However, the "employment conditions" of those persons employed by a school district and those employed by a county are not necessarily the same. Only those employees actually employed by a school district will receive the benefits of such employment. These benefits may include substantial pay differentials, tenure protection, medical and hospital care, pensions, holidays, and insurance programs. While a county or some other governmental entity may have similar programs, they are not necessarily identical or mandated. See Young Life v. Division of Employment & Training, 650 P.2d 515 (Colo.1982) (a purported religious organization could be constitutionally excluded from the unemployment tax exemption accorded churches even though its employees performed duties similar to those performed by employees of churches since the Division of Employment and Training determined that Young Life was less likely to provide, on a voluntary basis, support for workers who leave the organization and remain unemployed).[8]
We find that the statutory classification in question bears a rational relationship to legitimate state objectivesto provide unemployment compensation to employees of a county-administered Headstart Program who are not subject to the same employment conditions as employees of a school-administered program. Moreover, since federal funding for unemployment benefits is contingent upon a finding of compliance with federal regulations, the statutory classification is justified as conforming the state unemployment compensation program with federal law.
Therefore, we reverse the decision of the court of appeals in Board of County Commissioners of the County of Weld v. Muniz.

IV.
For the reasons enumerated in this opinion, the court of appeals' judgments in Adams County and Weld County are reversed with directions to affirm the Industrial Commission's awards of unemployment benefits to the claimants.
NOTES
[1] Project Headstart is a pre-school program for economically disadvantaged children designed to enhance their potential to succeed in school by providing classes and services to meet their intellectual, social, and health needs. See Headstart Economic Opportunity & Community Partnership Act of 1974, Pub.L. No. 93-644, 88 Stat. 2300 (1974) (codified at 42 U.S.C. §§ 2921-2928) (repealed 1981).
[2] The 1973 statute excepted only employees in "institution[s] of higher education." The exception was amended in ch. 40, sec. 2, § 8-73-107, 1976 Colo.Sess.Laws 360, to include employees of any educational institution.
[3] The requirements for federal approval are contained in 26 U.S.C. §§ 3304, 3309 (1982).
[4] A telegram from Assistant Secretary for Employment and Training, Ernest G. Green, and a subsequent explanatory letter summarized the Department of Labor's position that only Headstart workers employed by an educational institution are subject to exclusion from unemployment compensation.
[5] The Commission's final orders were entered in this case in December 1980 and January or February 1981, before the enactment of section 8-73-107(3), 3 C.R.S. (1973 & 1983 Supp.).
[6] We view section 13-4-102(1)(b), 6 C.R.S. (1973), as primarily a procedural device designed to facilitate docket management. Cases involving the constitutionality of a statute, ordinance, or municipal charter provision are heard first by the court having original jurisdiction and then by the appellate court or courts which have such jurisdiction. Even though Adams County raised its constitutional arguments at the earliest administrative review, it is doubtful that the Commission has authority to decide constitutional questions. Therefore, these issues must be raised for the first time on appeal to the court of appeals. Clasby v. Klapper, 636 P.2d 682, 684 n. 6 (Colo.1981) ("There was no need for the appellant to present his constitutional challenge to the board before raising the issue on appeal to the district court. Since the board could not rule on that claim, it would serve no purpose to impose such a requirement." (Citations omitted)). Kinterknecht v. Industrial Commission, 175 Colo. 60, 485 P.2d 721 (1971) ("Where the constitutionality of a statute under which an administrative agency acts is challenged, the administrative agency cannot pass upon its constitutionality. That function may be exercised only by the judicial branch of government."). See also Johnson v. Robison, 415 U.S. 361, 94 S.Ct. 1160, 39 L.Ed.2d 389 (1974) (adjudication of the constitutionality of congressional enactments has generally been thought to be beyond the jurisdiction of administrative agencies); Robinson v. United States, 718 F.2d 336 (10th Cir.1983) (an administrative agency is an inappropriate forum for determining whether its governing statute is constitutional; the agency may not declare the statute unconstitutional); Downen v. Warner, 481 F.2d 642 (9th Cir.1973) (a claim founded solely upon a constitutional right is suited only to a judicial forum and is clearly inappropriate to an administrative board); Yakima County Clean Air Authority v. Glascam Builders, Inc., 85 Wash.2d 255, 534 P.2d 33 (1975) (an administrative tribunal is without authority to determine the constitutionality of a statute).
[7] Amended in ch. 93, sec. 1, § 8-73-107, 1981 Colo.Sess.Laws 511.
[8] Young Life claimed that it was a "church" and, therefore, was entitled to claim the exemption from payment of unemployment taxes provided by section 8-70-103(10)(g)(I), 3 C.R.S. (1973 & 1983 Supp.).