In the Matter of the Claim of Jane WOLOSON, Claimant.

J.W. GANT & ASSOCIATES, INC., Petitioner,

v.

DEPARTMENT OF LABOR AND EMPLOYMENT DIVISION OF EMPLOYMENT AND TRAINING and the Industrial Claim Appeals Office of the State of Colorado, Respondents.

No. 89CA0579.

Colorado Court of Appeals, Div. IV.

Dec. 7, 1989.

Rehearing Denied March 8, 1990.

Certiorari Denied Aug. 13, 1990.

Aarestad, Stafford & Dihle, P.C., Dean A. Aarestad, Gordon Dihle, Laurie D. West, Aurora, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Carol A. Finley, Asst. Atty. Gen., Denver, for respondents Colorado Dept. of Labor and Employment, Div. of Employment and Training and Indust. Claim Appeals Office.

Opinion by Judge HUME.

J.W. Gant & Associates, Inc. (Gant) seeks review of an order of the Industrial Claim Appeals Office (Panel) which affirmed the hearing officer's determination that Jane Woloson and all other workers performing similar functions as stock brokers under similar conditions were "in employment" for purposes of employment tax liability. Gant contends that the Panel ex-

ceeded its authority in making that determination, that the determination is based solely on hearsay, and that the record evidence is insufficient to support the determination. Gant also contends that the statute and the Panel's decision arbitrarily denies securities broker-dealers equal protection by treating them differently than similarly situated real estate brokers. We affirm.

## I.

■ Gant first contends that, since the Division of Employment and Training failed to establish that claimant had been paid $500 in wages pursuant to § 8–73–108(3)(e)(II)(C), the Panel acted in excess of its statutory powers. We disagree.

Section 8–73–108(3)(e)(II)(C), C.R.S. (1987 Repl.Vol. 3B), upon which Gant relies, is included in the Article of the Colorado Employment Security Act (Act) that defines a person's eligibility and qualification for an award of unemployment compensation benefits. See § 8–73–101, et seq., C.R.S. (1987 Repl.Vol. 3B).

On the other hand, the portion of the Act that imposes tax liability and establishes conditions for tax coverage is § 8–76–101, et seq., C.R.S. (1987 Repl.Vol. 3B).

Tax liability issues must be decided, in the first instance, by the Division of Employment. See Wagner & Sons Construction, Inc. v. Pagels, 720 P.2d 987 (Colo. App.1986). Woloson's claim for unemployment compensation benefits, although it triggered the initiation of the Division's tax liability investigation, has yet to be adjudicated. Hence, we conclude that Gant's contention concerning Woloson's entitlement to benefits is premature and is not pertinent to these proceedings for determination of Gant's tax liability.

## II.

■ We also conclude that the evidence supports the Panel's findings that Woloson was not free from direction and control of the employer in the performance of services as required by § 8–70–103(10)(a)(I),

C.R.S. (1986 Repl.Vol. 3B). See Weld County Kirby Co. v. Industrial Commission, 676 P.2d 1253 (Colo.App.1983).

Although Gant asserts that such findings are based solely on hearsay, such is not the case. The findings are supported by the testimony of Gant's witnesses concerning its supervision of stockbrokers' transactions and by its own statements set forth in the Form F49 that Gant submitted to the Division of Employment.

The evidence also supports the Panel's determination that Woloson was not customarily engaged in an independent trade, occupation, profession, or business related to the service performed for employer as required under § 8–70–103(10)(a)(III), C.R.S. (1986 Repl.Vol. 3B). Stockbrokers are unable to perform their services without the supervision of a broker-dealer, and, while performing services for Gant, they are prohibited from performing similar services for others. See Allen Co. v. Industrial Commission, 762 P.2d 677 (Colo. 1988). Thus, Gant failed to rebut the presumption that claimant was engaged in covered employment for the purposes of § 8–70–103(10)(a).

## III.

■ We find no merit in Gant's further contention that the Panel's order is unconstitutionally vague. The Panel is not held to a "crystalline" standard in articulating its conclusions, or in framing its orders. See Mohawk Data Sciences Corp. v. Industrial Commission, 671 P.2d 1335 (Colo. App.1983).

Here, the order demonstrates that the entire record was considered and the relevant arguments were addressed by the Panel. Further, the Panel concluded that: "Woloson and all other workers performing the same or similar functions as stockbrokers under the same or similar conditions are in 'employment' under § 8–70–103(10)(a), C.R.S. (1986 Repl.Vol. 3B)." Such conclusion is sufficiently clear to define the import of the order and to provide guidance to Gant in ascertaining the extent of its tax liability for individuals it engages as stockbrokers.

## IV.

■ Gant also contends that the Colorado statutory scheme for imposition of taxes under the Employment Security Act reflects an arbitrary and discriminatory classification of employing entities, and that the Panel's application of the Act to impose a tax on securities broker-dealers while exempting real estate brokers from taxation constitutes an unconstitutional denial of equal protection. We disagree.

One who attacks the constitutionality of a statute bears the burden to demonstrate beyond a reasonable doubt that the law is unconstitutional in order to overcome a strong presumption of constitutionality. *Kinterknecht v. Industrial Commission,* 175 Colo. 60, 485 P.2d 721 (1971).

■ The threshold inquiry presented by a constitutional challenge claiming a statutory denial of equal protection is whether persons or entities who are in fact similarly situated are subject to disparate treatment under the challenged statute. *Board of County Commissioners v. Flickinger,* 687 P.2d 975 (Colo.1984).

An equal protection challenge of a statute that involves neither a "suspect classification" nor an infringement of a "fundamental right" requires application of the rational basis test. *Stevenson v. Industrial Commission,* 190 Colo. 234, 545 P.2d 712 (1976). Under that test, if any state of facts can be conceived that would sustain the challenged statutory classification, that state of facts will be presumed to exist in the absence of legitimate proof to the contrary. *Kinterknecht v. Industrial Commission, supra.*

The Act rests upon the police power of the state to assure a measure of security to its citizens against the hazard of unemployment. *Industrial Commission v. Northwestern Mutual Life Insurance Co.,* 103 Colo. 550, 88 P.2d 560 (1939). Its purpose and policy is to provide some protection to persons unemployed through no fault of their own. *See* § 8–70–102, C.R.S. (1986 Repl.Vol. 3B); *Denver Post Corp. v. Industrial Commission,* 677 P.2d 436 (Colo.App. 1984). To further that purpose in the exercise of police power, the Colorado General Assembly is authorized to levy a tax on employers to defray the cost thereof. *Cottrell Clothing Co. v. Teets,* 139 Colo. 558, 342 P.2d 1016 (1959).

In implementing social programs designed to promote public health, safety, and welfare, states are not required to treat all persons or entities equally for purposes of imposing a tax. Rather, the legislative body may make rational classifications of employing entities to effectuate the legitimate purposes of such legislation. In so doing, the lawmaking body may consider costs and political and practical difficulties in enacting, administering, and enforcing the tax. The legislative body may also consider the desirability of fostering beneficent enterprises in devising schemes for taxation. *See Carmichael v. Southern Coal & Coke Co.,* 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 (1937); *Romero v. Hodgson,* 319 F.Supp. 1201 (N.D.Cal.1970), *aff'd,* 403 U.S. 901, 91 S.Ct. 2215, 29 L.Ed.2d 678 (1971).

In addition, the General Assembly may consider the desirability of conforming its taxing policy with federal statutes that require joint federal-state cooperation to facilitate the administration of complementary social welfare programs, even though absolute conformity is not required. *See Industrial Commission v. Board of County Commissioners,* 690 P.2d 839 (Colo. 1984); *cf. Brannaman v. Richlow Manufacturing Co.,* 106 Colo. 317, 104 P.2d 897 (1940).

Here, Gant presented evidence tending to show that securities brokers are subject to regulation by federal and state agencies in a manner similar to that imposed by the Colorado Real Estate Commission upon real estate salesmen and agents. Based solely upon this alleged similarity, Gant argues that the legislative exemption of real estate brokers from taxation, pursuant to § 8–70–103(11)(*l* ), C.R.S. (1986 Repl.Vol. 3B), constitutes an unconstitutionally disparate treatment for stockbrokers.

In our view, the argument assumes too much from the limited evidence offered to support it. The existence of similarities in

regulatory schemes governing the conduct of professional and business enterprises does not necessarily eliminate all differences worthy of consideration by the legislative body in devising policies related to social welfare and taxation.

Real estate brokerage firms deal in real property transactions, while stock broker-dealers deal in transactions involving a wide variety of securities investments. Real estate brokers, agents, and salesmen are regulated exclusively by an agency of the state government, while securities broker-dealers and stockbrokers are regulated by the federal Securities & Exchange Commission through the auspices of the National Association of Securities Dealers, as well as by the State Securities Commissioner. Real estate brokerage firms are scattered throughout the state, while stock brokerage firms tend to be concentrated and headquartered in more metropolitan communities.

The Federal Unemployment Tax Act (FUTA), 26 U.S.C. §§ 3301–3311 (1982), exempts neither real estate brokers nor stock broker-dealers from taxation. Prior to 1986, the Colorado Act exempted both. *See* Colo.Sess.Laws 1986, ch. 74, § 8–70–103(11)(a)(*l*) at 541 (Eliminating exemption for security salesmen and relocating exemption for insurance agents and solicitors).

The differences in location, manner of regulation, and nature of enterprise all involve practical differences supporting disparate but rational classifications of the two enterprises. The General Assembly may have considered the business conducted by real estate brokers to be a beneficent enterprise to be fostered. It may rationally have concluded that the practical and political difficulty in administering and enforcing the tax against real estate brokers outweighed any advantage to be gained by imposing the tax against that enterprise. It may also have found persuasive the administrative benefits of conforming the Colorado Act with FUTA to the extent practically and politically feasible. *See* Tape Recordings of the House Committee on Business Affairs & Labor on H.B. 1012, January 28, 1986, 55th General Assembly.

Thus, we conclude that Gant has failed to sustain the burden of proving that the Act is an unconstitutional violation of its right to equal protection, either facially or as applied.

The order is affirmed.

CRISWELL and NEY, JJ., concur.