**Susann A. GETTS, Petitioner,**

**v.**

**The INDUSTRIAL CLAIM APPEALS OFFICE OF the STATE OF COLORADO, The Colorado Division of Employment and Training and Ticor Title Insurance Company, Respondents.**

**No. 90CA0330.**

Colorado Court of Appeals,
Div. IV.

Dec. 6, 1990.

William E. Benjamin, Boulder, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Michael J. Steiner, Jill M.M. Gallet, Asst. Attys. Gen., Denver, for respondents Industrial Claim Appeals Office and the Colorado Div. of Employment and Training.

No Appearance for respondent Ticor Title Ins. Co.

Opinion by Judge CRISWELL.

Susann A. Getts (claimant) seeks review of the order of the Industrial Claim Appeals Office (Panel) that denied her claim for unemployment compensation benefits. The sole issue presented is whether § 8–73–108(4)(f), C.R.S. (1990 Cum.Supp.), which is limited in its application to "construction workers," denies to claimant equal protection of the law. We conclude that the record here does not support claimant's assertion of a constitutional deprivation. Thus, we affirm the Panel's order.

Claimant quit her employment as a title examiner for a title insurance company to accept what she considered to be better employment as a customer service representative at a different title company. Claimant was laid off four weeks later when her new employer replaced her with a former employee. Claimant applied for unemployment compensation benefits, but the hearing officer concluded that claimant did not meet the criteria for a full award under § 8–73–108(4)(f). Thus, he concluded that claimant was disqualified under § 8–73–108(5)(e)(V), C.R.S. (1990 Cum. Supp.) from receiving the benefits applied for.

Section 8–73–108(5)(e)(V) provides that an employee is disqualified from receiving benefits if the employee quits the job to seek other work or to accept other employment. However, § 8–73–108(4)(f) creates an exception to this general rule of disqualification. This latter statute says that, "due to the particular nature of the building and construction industry," a "construction worker" will be entitled to full benefits if he quits one "construction job" to accept another "construction job," and if (1) the quitting of the first job occurs within 30 days of the "established termination date" of that job and other specified conditions are met, *or* (2) the job quit involved unreasonable working conditions with respect to the distance between the job and the employee's residence, *or* (3) the job quit was outside the state, the employee is a resident of this state, and the new job is within the state, *or* (4) the quitting of the job was required so as to comply with an employer's assignment under an apprenticeship program that is in accordance with such programs registered with the federal government.

Claimant asserts that the record here demonstrates that this statutory exception to the general rule invidiously · discriminates against all other employees and in favor of construction workers and, thus, violates the equal protection requirements of the federal and state constitutions. We disagree.

■ A statute is presumed to be constitutional, and the party challenging it bears the heavy burden of proving it unconstitutional beyond a reasonable doubt. *Weitzel Redi–Mix, Inc. v. Industrial Commission*, 728 P.2d 364 (Colo.App.1986).

■ The threshold inquiry presented by a claim that a statute denies a party equal protection is whether persons or entities who are in fact similarly situated are subject to disparate treatment under the challenged statute. *Board of County Commissioners v. Flickinger*, 687 P.2d 975 (Colo.1984). This inquiry necessarily involves a factual consideration and determination.

■ Further, because the equal protection challenge here involves neither a "suspect classification" nor an infringement of a "fundamental right," we must apply the "rational relationship" test in determining the statute's constitutionality. *See Stevenson v. Industrial Commission*, 190 Colo. 234, 545 P.2d 712 (1976).

Under that test, a statutory classification is valid unless it has no rational basis or is not rationally related to a legitimate state interest. Thus, the provision challenged here cannot be invalidated if there is any reasonably conceivable set of facts that would lead to the conclusion that the classification created meets the rational relationship standard. *Kinterknecht v. Industrial Commission*, 175 Colo. 60, 485 P.2d 721 (1971); *In re Claim of Woloson*, 796 P.2d 1 (Colo.App.1989).

Here, claimant presented not an iota of evidence to demonstrate that her job as a title examiner for a title company is so similar to the job of a construction worker as to admit of no rational distinction. *See In re Claim of National Claims Associates, Inc. v. Division of Employment,* 786 P.2d 495 (Colo.App.1989) (evidence insufficient to demonstrate that non-exempted insurance agents are similar to real estate agents exempted from act by § 8–70–103(11)(*l*), C.R.S. (1986 Repl.Vol. 3B)). Rather, she rests her claim of invalidity solely upon the face of the statute itself.

However, the statute contains a legislative declaration that it was enacted because of the "particular nature" of the construction industry. And, its substantive provisions make the particular nature of the work in this industry evident.

Thus, in its various subsections, § 8–73–108(4)(f) recognizes that a construction worker's employment is not of a continuing nature, but normally has an "established termination date," that such a worker may be required to travel a considerable distance from his or her home to the job site, that such a resident worker may be required to go out of state on a construction job, and that such a worker may be subject to an apprenticeship program that will require him or her to be assigned to various jobs.

Because of the general transitory nature of employment in the building and construction industry, § 8–73–108(4)(f) is merely one of several statutes that treat employees in this industry differently from other employees. At the state level, for example, employees in the construction industry may be exempted from the time-consuming pre-agreement election procedures generally required for an all-union agreement. Section 8–3–109(3), C.R.S. (1986 Repl.Vol. 3B). Similarly, at the federal level, the United States Congress has allowed employees in this industry to enter into so-called "hot cargo" and "pre-hire" agreements, generally forbidden to other employees, and has reduced the time within which such employees may be required to become union members. 29 U.S.C.A. 158(e) and (f) (1973).

These provisions were enacted to "take into account the occasional nature of employment in the building and construction industry." II C. Morris, *The Developing Labor Law* 1384 (2d Ed.1983). And, presumably because of the evident unique nature of the building and construction industry, there have been few claims that these statutes violate either the right to equal protection under the Fourteenth Amendment or the due process clause of the Fifth. When such a claim has been made, it has been rejected. *See Truck Drivers Union Local No. 413 v. N.L.R.B.,* 334 F.2d 539 (D.C.Cir.1964). *See also Brown v. Local No. 17, Amalgamated Lithographers,* 180 F.Supp. 294 (N.D.Calif.1960) (parties did not dispute existence of special circumstances in construction industry).

These same considerations apply here. Because construction workers are subjected to working conditions not generally encountered by other employees, there is a rational basis for treating them differently for unemployment compensation purposes. And, our review of the substantive provisions of the statute here attacked convinces us that the legislative resolution is reasonably adapted to meet the problems that are unique to this industry. Thus, we reject claimant's assertion that the statute offends, on its face, against any equal protection requirements.

Order affirmed.

MARQUEZ and DAVIDSON, JJ., concur.