[No. 8637-9-II.   Division Two.   April 29, 1987.]

THE STATE OF WASHINGTON, *Respondent*, v. HORST
VON THIELE, *Petitioner*.

*Stephen Navaretta, Clinton H. Hattrup,* and *Benson, Hattrup & Stege,* for petitioner.

*George F. Hanigan, Prosecuting Attorney,* and *Fred A. Johnson, Deputy,* for respondent.

PEARSON, J.*—In Washington, wildlife represents a tremendous ecological, recreational, aesthetic, and economic value to the citizens of the state.[1] The preservation and perpetuation of wildlife is dependent upon effective wildlife management, including the administration and enforcement of wildlife laws, and judicial application of such legislation.[2] This case presents a unique opportunity for this court to promote wildlife law enforcement through judicial application of wildlife legislation.

The primary issue in this case is whether former RCW 77.21.070(1), which requires a person convicted of illegal hunting to reimburse the State for each animal illegally taken, is penal in nature, thereby requiring the State to prove beyond a reasonable doubt that an animal was actually killed by the person assessed the penalty. We hold that former RCW 77.21.070(1) is a civil penalty statute for the recovery of wildlife values; thus, the standard of proof necessary to impose the penalty is evidence sufficient to afford a reasonable basis for estimating the loss, rather than proof beyond a reasonable doubt.

## FACTS

The facts of this case are undisputed.[3] In the early hours of January 29, 1984, a herd of about 50 elk left the Columbian Whitetailed Deer Refuge along the Columbia River in southwestern Washington, and entered a farmer's pasture adjacent to the refuge. At dawn, Horst Von Thiele parked his green and white Chevy Blazer on Brooks Slough Road, situated 500 to 700 yards across from the pasture which contained the elk. Von Thiele exited his vehicle, rested his

---

*This appeal was heard by two Supreme Court Justices and a retired Supreme Court Justice sitting as Court of Appeals Judges Pro Tempore in Division Two.

[1]See Laws of 1983, 1st Ex. Sess., ch. 8, § 1, p. 1544.

[2]W. Sigler, *Wildlife Law Enforcement* 9 (3d ed. 1980).

[3]The parties have agreed that a summary of the game report prepared by the investigating game agent is an accurate description of the incident.

rifle on the hood and fired between 10 to 12 times into the herd of elk, wounding several animals. The elk then fled onto Maurice Mooers' farm.

Von Thiele drove his vehicle down the road to a different location and fired 5 to 6 more shots into the herd. Several witnesses who were in direct line of fire stated that they observed elk being wounded. One elk dropped from being hit in the spine.

Von Thiele then attempted to retrieve the downed elk from the Mooers' farm. Mooers, however, refused to let him onto his property. Thereafter, Mooers went into his field and found four crippled elk, which he killed. Other hunters killed another crippled elk when it was unable to get out of a slough. A sixth elk was found on the Mooers' property and tagged by another hunter. Witnesses observed at least four more crippled elk in the herd as it returned to the refuge.

Later that same day Jay Brightbill, the reporting game agent, contacted Von Thiele near the Mooers' farm and read him his *Miranda* rights. Von Thiele did not have a permit to hunt elk in the area, but his son, who had accompanied him, did have a permit. Von Thiele explained to Agent Brightbill that his son had wounded an elk and that he had fired only 3 to 4 shots in an attempt to kill the crippled animal.

In the days following the shooting, Agent Brightbill found 2 dead elk on the refuge, both calves, fatally wounded in the stomach. He also observed 7 to 10 other wounded elk as a result of the January 29, 1984 shooting, 2 of which the game department destroyed to end their suffering.

Von Thiele was charged with unlawful hunting without a tag pursuant to RCW 77.16.020(5), unlawful shooting pursuant to RCW 77.16.260, and reckless endangerment. Following a district court trial in Wahkiakum County, Von Thiele was convicted of unlawful hunting and unlawful shooting; however, the reckless endangerment charge was dismissed. The court sentenced Von Thiele to 365 days in

jail, 335 of which were suspended, and fined him $1,000 for the charge of illegal hunting and $500 for the charge of unlawful shooting. The suspended sentence was conditioned on 200 hours of community service and compliance with a prohibition on hunting for a period of 2 years. In addition, the court, pursuant to former RCW 77.21.070(1), ordered Von Thiele to reimburse the State $4,000 for eight elk he killed.

Von Thiele appealed to Wahkiakum County Superior Court. On March 14, 1985, the Superior Court entered an order affirming the judgment and sentence of the District Court, including the reimbursement order requiring Von Thiele to pay the State $4,000. Thereafter, Von Thiele filed a notice for discretionary review, which this court granted.

## ANALYSIS

As mentioned earlier, the sole issue we must determine is whether former RCW 77.21.070(1), which requires a person convicted of illegal hunting to reimburse the State for each animal illegally killed, is penal in nature, thereby requiring the State to prove beyond a reasonable doubt that the person assessed the penalty actually killed an animal. Von Thiele alleges that the Superior Court erred in failing to reverse the penalties imposed pursuant to former RCW 77.21.070(1). According to Von Thiele, RCW 77.21.070(1) is a penal statute which creates an additional factual element of the crime of illegal hunting: the State must prove beyond a reasonable doubt that the person assessed the penalty actually killed the animal. Because the evidence establishes that the elk were killed by the intervening acts of other hunters and game officials, Von Thiele contends that the State failed to prove beyond a reasonable doubt that he killed the elk. Therefore, he maintains that the reimbursement order was erroneously imposed. We disagree.

We begin our analysis by recognizing that the Legislature may provide for both civil and criminal penalties in the same act without converting the civil penalty scheme into a criminal or penal proceeding. *See Helvering v. Mitchell,*

303 U.S. 391, 399, 82 L. Ed. 917, 58 S. Ct. 630 (1938); *Beckett v. Department of Social & Health Servs.*, 87 Wn.2d 184, 188, 550 P.2d 529 (1976); *Yakima Cy. Clean Air Auth. v. Glascam Builders, Inc.*, 85 Wn.2d 255, 260, 534 P.2d 33 (1975). A statute is criminal or penal in nature when a violation of its provisions can be punished by imprisonment and/or a fine. *State v. Eilts*, 94 Wn.2d 489, 494 n.3, 617 P.2d 993 (1980), citing *State v. Hart*, 136 Wash. 278, 283, 239 P. 834 (1925). The due process clause requires the accused, charged with a violation of a criminal law, to be convicted "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970). A statute is remedial when it provides for the remission of penalties and affords a remedy for the enforcement of rights and *redress of injuries*. *Eilts*, at 494 n.3; *Haddenham v. State*, 87 Wn.2d 145, 148, 550 P.2d 9 (1976) (citing 3 C. Sands, *Statutory Construction* § 60.02 (4th ed. 1974)). Therefore, the dispositive issue in this case is whether the Legislature intended former RCW 77.21.070(1) to be a penal or remedial statute.

■■ We turn first to the general principles of statutory construction. In construing a statute the court's primary objective is to ascertain and implement the intent of the Legislature, which requires the court initially to consider the language of the statute. *Service Employees Int'l, Local 6 v. Superintendent of Pub. Instruction*, 104 Wn.2d 344, 348, 705 P.2d 776 (1985). If the statutory language is plain and unambiguous, the court's inquiry must end, for a statute's meaning must be derived from the wording of the statute itself. *Human Rights Comm'n v. Cheney Sch. Dist. 30*, 97 Wn.2d 118, 121, 641 P.2d 163 (1982). Moreover, all sections of an act must be construed as a whole. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 788, 719 P.2d 531 (1986).

Here, the language of the statute is plain and unambiguous. Former RCW 77.21.070(1) provides in pertinent part:

Whenever a person is convicted of illegal hunting or possession of wildlife listed in this subsection, the convicting court shall order the person *to reimburse* the *state* in the following amounts for each animal killed or possessed . . .

(Italics ours.) The term "reimburse" is not defined in former RCW 77.21.070. Absent statutory definition the words of a statute must be given their usual and ordinary meaning. *Adams v. Department of Social & Health Servs.,* 38 Wn. App. 13, 16, 683 P.2d 1133 (1984); *State v. Peters,* 35 Wn. App. 427, 431, 667 P.2d 136 (1983). The dictionary defines "reimburse" as "to make restoration". *Webster's Third New International Dictionary* 1914 (1981). Therefore, the meaning of reimburse is synonymous with the definition of "restitution": "an act of restoring or a condition of being restored". *Webster's Third New International Dictionary* 1936 (1981). Thus, the plain and unambiguous language of former RCW 77.21.070(1) unequivocally demonstrates a legislative intent to provide a civil penalty system in the form of restitution for the redress of wildlife values lost because of illegal hunting. Accordingly, former RCW 77.21.070(1) is inherently remedial, rather than criminal, in nature.

Additional support for this conclusion is found in the accompanying sections of the act. Section 1 of the Laws of 1983, 1st Ex. Sess., ch. 8 states:

The legislature finds that wildlife is of great ecological, recreational, esthetic, and economic value to the people of the state of Washington. It further finds that the illegal taking and possession of certain valuable wildlife species is increasing at an alarming rate and that *the state should be reimbursed for the loss of individual wildlife of these species* in the amounts specified in section 3 of this act [now codified as RCW 77.21.070].

(Italics ours.) Additionally, in former RCW 77.21.070(4), the Legislature specifically separated the reimbursement provision from the fines and penalty assessments. Former RCW 77.21.070(4) provides that "[t]he reimbursement amount provided in this section shall be imposed in addi-

tion to and regardless of any penalty, including fines, or costs, that is provided for violating any provision of Title 77 RCW."

Finally, the language of former RCW 77.21.070(3) suggests that the act is based more in tort law than in criminal law. That statute states: "If two or more persons are convicted of illegally hunting or possessing wildlife listed in this section, the reimbursement amount shall be imposed upon them jointly and separately." This language clearly indicates that the Legislature intended to impose the concept of joint and several liability where more than one person is involved in the killing of wildlife.

Therefore, we hold that the plain and unambiguous language of former RCW 77.21.070(1) and the accompanying sections of the act demonstrate that former RCW 77.21-.070(1) implements a civil penalty in the form of restitution, which recovers wildlife values lost as a result of illegal hunting.

Having concluded that former RCW 77.21.070(1) is a restitution statute, we must next determine what a plaintiff must first establish to invoke the reimbursement provision. The Superior Court found the proper burden of proof for imposition of the reimbursement penalty to be the preponderance of the evidence standard. This conclusion is consistent with the leading Washington case law construing restitution statutes. *See State v. Smith,* 33 Wn. App. 791, 658 P.2d 1250 (1983). In *Smith,* the court considered the restitution provision of the Juvenile Justice Act of 1971, RCW 13.40.190(1), which provides in relevant part:

> In its dispositional order, the court shall require the respondent to make restitution to any persons who have suffered loss or damage as a result of the offense committed by the respondent.

(Italics ours.) The court held that the appropriate standard of proof for the imposition of restitution was the civil burden required to prove damages in tort, specifically, evidence sufficient to afford a reasonable basis for estimating the loss. *Smith,* at 796–97.

Relying on *Smith,* which construes a restitution statute analogous to former RCW 77.21.070(1), we hold that the plaintiff's burden of proof under former RCW 77.21.070(1) is the preponderance of the evidence. A plaintiff must provide proof sufficient to afford a reasonable basis for estimating loss.

Here, the record overwhelmingly establishes that Von Thiele's shooting spree mortally wounded at least eight elk and perhaps numerous others. Therefore, the evidence sufficiently affords a reasonable basis for estimating loss. Accordingly, the Superior Court properly affirmed the District Court's reimbursement order pursuant to former RCW 77.21.070(1).

UTTER and WILLIAMS, JJ. Pro Tem., concur.

Review denied by Supreme Court July 1, 1987.