[No. 20640-1-I. Division One. January 30, 1989.]

THE STATE OF WASHINGTON, *Petitioner,* v. MICHAEL
ANKNEY, *Respondent.*

*Norm Maleng, Prosecuting Attorney,* and *Susan J.
Noonan* and *Carol D. Spoor, Deputies,* for petitioner.

*Suzanne Elliott* of *Associated Counsel for the Accused,*
for respondent.

WEBSTER, J.—The State of Washington seeks discretion-
ary review of a decision that the penalty scheme for viola-
tions of King County's animal control regulations violates

equal protection. The District and Superior Courts invalidated the penalty provisions in KCC 11.04.190 and KCC 11.04.200 because, read together, they allegedly permit King County animal control authorities to punish animal control violations as either civil penalties or misdemeanors.

## FACTS

The defendant's dog bit the hand of another person on August 23, 1986. A King County animal control officer responded by citing the defendant with violating KCC 11.04.230(H). KCC 11.04.230(H) declares the following to be a criminal nuisance: "Any animal which has exhibited vicious propensities and which constitutes a danger to the safety of persons or property off [the owner's] premises or lawfully on his premises".

The defendant admitted at trial that his dog had bitten the victim. However, the defendant argued that the victim was a trespasser. The District Court did not decide whether the victim was "lawfully on" the defendant's premises, because the court accepted the defendant's later argument that criminal punishment would be unconstitutional.

The defendant argued that the penalty scheme in KCC 11.04.190 and KCC 11.04.200 violated equal protection. KCC 11.04.190 makes all animal control violations misdemeanors,[1] and KCC 11.04.200 mandates a civil penalty "[i]n addition to or as an alternative to" criminal punishment.[2] According to the memorandum opinion of another

---

[1]KCC 11.04.190 provides as follows:

"Any person who allows an animal to be maintained in violation of this chapter is guilty of a misdemeanor punishable by fine of not more than two hundred fifty dollars and/or imprisonment for a term not to exceed ninety days."

[2]KCC 11.04.200 provides in pertinent part:

"In addition to or as an alternative to any other penalty provided in this chapter or by law, any person whose animal is maintained in violation of this chapter shall incur a civil penalty in an amount not to exceed two hundred and fifty dollars per violation to be directly assessed by the director plus billable costs of the animal control authority. The director, in a reasonable manner, may vary the amount of the the penalty assessed to consider the appropriateness of the penalty to the nature and type of violation; the gravity of the violation;

judge on the same issue, which the District Court adopted as its own analysis,

[t]hese statutes permit charging officials to choose whether a person faces the stigma of a criminal record, with risk of jail, or only suffers a monetary penalty as a civil infraction. The power to make such a choice cannot be countenanced with the constitutional guarantee of equal protection of law.

King County v. Manderson, Renton Dist. Ct. cause AC 1582–84 (Dec. 17, 1986). The Superior Court affirmed without discussion, apparently agreeing with the District Court's analysis.

CONSTITUTIONALITY OF KCC 11.04.190
AND KCC 11.04.200

 We do not agree with the District and Superior Courts. The Supreme Court upheld a virtually identical penalty scheme against equal protection objections in *Yakima Cy. Clean Air Auth. v. Glascam Builders, Inc.*, 85 Wn.2d 255, 534 P.2d 33 (1975). The court held that "it is constitutionally permissible to provide for civil or criminal penalties, or both, for the same act." *Yakima Clean Air*, at 260. The first of the two statutes upheld in *Yakima Clean Air* made violations of the clean air act misdemeanors. *See* former RCW 70.94.430.[3] The second established mandatory

---

the number of past and present violations committed and the good faith of the violator in attempting to achieve compliance with prescribed requirements or after notification of a violation."

[3]Former RCW 70.94.430 reads in part:
 Any person who violates any of the provisions of this 1967 amendatory act, or any ordinance, resolution, rule or regulation in force pursuant thereto, other than section 33 of this 1967 amendatory act, shall be guilty of a gross misdemeanor and upon conviction thereof shall be punished by a fine of not less than one hundred dollars nor more than one thousand dollars, or by imprisonment for a term of not more than one year or by both fine and imprisonment for each separate violation.
Laws of 1967, ch. 238, § 61. The criminal penalty was reduced to a misdemeanor punishable by a fine of "not more than two hundred fifty dollars," or by imprisonment for "not more than ninety days," or both, by Laws of 1973, 1st Ex. Sess., ch. 176, § 1. The fine was increased to "one thousand" dollars by Laws of 1984, ch.

civil penalties for each violation "[i]n addition to or as an alternate to any other penalty provided by law". *See* former RCW 70.94.431.[4] The penalty scheme in KCC 11.04.190 and KCC 11.04.200 is essentially identical to the scheme upheld in *Yakima Clean Air*. See footnotes 1, 2.

Nevertheless, the defendant suggests that *Yakima Clean Air* did not address the equal protection argument that he advances. The defendant cites *Olsen v. Delmore,* 48 Wn.2d 545, 295 P.2d 324 (1956) and *State v. Mason,* 34 Wn. App. 514, 663 P.2d 137 (1983), which recently followed *Olsen,* in support of his argument. The defendant overlooks that *Yakima Clean Air* distinguished *Olsen. See* 85 Wn.2d at 259. He misses the distinction drawn there between (1) misdemeanor and felony penalties for the same conduct, and (2) mandatory civil liability as an additional or alternative penalty. *See Yakima Clean Air,* at 259–60. The *Olsen* and *Mason* cases cited by the defendant and apparently relied upon by the lower courts involve the first situation, not the second.

Even so, the defendant contends that the dispositive issue in this case is whether the penalty is penal or remedial. He cites *State v. Von Thiele,* 47 Wn. App. 558, 736 P.2d 297, *review denied,* 108 Wn.2d 1029 (1987), and *United States v. Ward,* 448 U.S. 242, 65 L. Ed. 2d 742, 100 S. Ct. 2636 (1980). The defendant's reliance on *Von Thiele*

---

255, § 1, which also removed the exception for violation of RCW 70.94.205. Otherwise, the original enactment as quoted remains in force.

[4]Former 70.94.431 reads in part:

In addition to or as an alternate to any other penalty provided by law, any person who violates any of the provisions of chapter 70.94 RCW or any of the rules and regulations of the state board or the board shall incur a penalty in the form of a fine in an amount not to exceed two hundred fifty dollars per day for each violation. Each such violation shall be a separate and distinct offense, and in case of a continuing violation, each day's continuance shall be a separate and distinct violation.

Laws of 1969, 1st Ex. Sess., ch. 168, § 53. The penalty was increased to "one thousand" dollars by Laws of 1984, ch. 255, § 2. The language "penalty in the form of a fine" was replaced by "civil penalty" by Laws of 1987, ch. 109, § 19. Otherwise the original law as quoted has remained the same.

and *Ward* is misplaced. The only reason *Von Thiele* distinguished between "penal" and "remedial" punishment provisions is that due process requires proof beyond a reasonable doubt of the elements of the former but not the latter. *See* 47 Wn. App. at 562; *In re Winship,* 397 U.S. 358, 25 L. Ed. 2d 368, 90 S. Ct. 1068 (1970); *United States v. Regan,* 232 U.S. 37, 47–48, 58 L. Ed. 494, 34 S. Ct. 213 (1914). *Ward* distinguished between "civil penalties" that are truly civil and those that are criminal in character because the Fifth Amendment privilege against compulsory self–incrimination applies "in any criminal case", U.S. Const. amend. 5, as well as in quasi–criminal cases, *Boyd v. United States,* 116 U.S. 616, 633–34, 29 L. Ed. 746, 6 S. Ct. 524 (1886), but not in civil enforcement proceedings. *Ward,* 448 U.S. at 248, 251–55. *Von Thiele* and *Ward* do not purport to address equal protection, and certainly do not alter the holding in *Yakima Clean Air,* that "it is constitutionally permissible to provide for civil or criminal penalties, or both, for the same act." 85 Wn.2d at 260. Both *Von Thiele* and *Ward* rejected arguments made by the defendants in those cases, that the character of their punishment was penal, holding instead that the penalties imposed were civil.

Notably, *Ward* held that a "civil penalty" label "takes on added significance" when an immediately preceding paragraph of the same statute sets forth criminal liability. 448 U.S. at 249. In such circumstances "only the clearest proof", *Ward,* at 249 (quoting *Fleming v. Nestor,* 363 U.S. 603, 617–21 (1960)), "that the penalty . . . is punitive either in purpose or effect", *Ward,* at 251, can suffice "to establish the unconstitutionality of a statute on such a ground.'" *Ward,* at 249 (quoting *Fleming v. Nestor, supra*). The fact that another statute criminalizes the same conduct redressed by the civil penalty does provide the necessary proof. 448 U.S. at 250. On the contrary, the separation of civil and criminal penalties for the same conduct tends to clarify the respective character of each penalty, particularly when the two penalties are contained in the same statute. *See Ward,* at 250; *Helvering v. Mitchell,* 303 U.S. 391, 404,

82 L. Ed. 917, 58 S. Ct. 630 (1938) (affirming civil penalty for tax fraud, following acquittal of the same, despite double jeopardy plea). Nor is sufficient proof of a punitive purpose or effect presented when the civil penalty provision speaks of each violation as a "separate offense" and refers to "the appropriateness of such penalty" in view of "the gravity" of the offense. 448 U.S. at 245 n.5 (quoting 33 U.S.C. § 1321(b)(6)).

■ The "civil penalty" in KCC 11.04.200 is no more "penal" and no less "remedial" than the "civil penalty" upheld in *Ward*. The $5,000 maximum penalty per violation deemed remedial in *Ward* is 20 times the $250 figure in KCC 11.04.200. The ordinance directs King County animal control authorities to consider the "appropriateness of the penalty" and "the gravity of the violation"—essentially the same factors considered by the penalty–enforcing agency in *Ward*. Finally, KCC 11.04.200 defines the penalty for animal control violations as $250 or less per violation "plus billable costs of the animal control authority." "Billable costs" do not represent the County's complete outlay in relation to animal control violations, so the $250 or lesser amount per violation presumably reimburses the County for the remainder of its enforcement expense. We say "presumably" because the defendant has the burden of proving the unconstitutionality of the penalty scheme. *State v. Maciolek*, 101 Wn.2d 259, 676 P.2d 996 (1984) (party asserting unconstitutionality of enactment must prove its invalidity beyond a reasonable doubt). We believe there is at least a reasonable doubt to the defendant's claim that the "civil penalty" in KCC 11.04.200 is misnamed.

The issue here is not disparate criminal penalties for the same conduct as in *Olsen* and *Mason*. *Yakima Clean Air* makes this explicit. Nor is the issue the appropriate quantum of proof, as in *Von Thiele*, or the Fifth Amendment privilege, as in *Ward*. Instead, the only question is whether the "civil penalty" in KCC 11.04.200, based on a properly proved violation of KCC 11.04.230(H), may be imposed. *Yakima Clean Air*'s approval of a substantially greater

monetary penalty "[i]n addition to or as an alternative to" criminal punishment convinces us that it may.

## VAGUENESS OF "LAWFULLY ON" LANGUAGE

The defendant argues alternatively that KCC 11.04-.230(H) is unconstitutionally vague. The defendant points to KCC 11.04.230(H)'s reference to whether the victim of a vicious animal is "lawfully on" the accused's premises.

In *State v. Aver*, 109 Wn.2d 303, 745 P.2d 479 (1987), the Supreme Court upheld RCW 81.48.020 against a similar vagueness challenge. RCW 81.48.020 makes it a misdemeanor to "wilfully obstruct, hinder, or delay the passage of any car *lawfully operated* upon any railway". *Aver*, at 306 (quoting RCW 81.48.020 and adding italics). The *Aver* court distinguished numerous cases striking down criminal statutes defined in terms of lawfulness or illegality on the ground that the uncertainty created by such language applied directly to the accused. *Aver*, at 307–08. Referring to RCW 81.48.020, the court stated

Here, in contrast, . . . [t]he term "lawfully operated" is directed not toward the activities of the accused. Rather, RCW 81.48.020 forbids a definite course of conduct—willfully obstructing, hindering or delaying the passage of a train. The proscribed activity being clearly stated, the defendants cannot claim constitutional confusion as to the lawfulness of the operation of the train.

*Aver*, at 308.

Likewise, KCC 11.04.230(H) does not refer to the "lawfulness" of the defendant or any other accused owner of a vicious animal. Instead, KCC 11.04.230(H) draws a distinction between victims who are "lawfully on" the accused's premises and those who are not. As in *Aver*, the defendant "cannot claim constitutional confusion" here based on the lawfulness of the victim's conduct. *Aver*, at 308.

KCC 11.04.230(H) proscribes maintaining "[a]ny animal which has exhibited vicious propensities and which constitutes a danger to the safety" of others. Maintaining a dog in violation of the ordinance may be less clear than

obstructing a train, but the ordinance is sufficiently definite. *Cf. Spokane v. Vaux,* 83 Wn.2d 126, 516 P.2d 209 (1973) (upholding ordinance criminalizing dangerous driving).

Having found that *Yakima Clean Air* and *Aver* respectively dispose of the defendant's equal protection and void–for–vagueness arguments, we reverse and remand for further proceedings.

PEKELIS and WINSOR, JJ., concur.