180 P.3d 863 (2008)
STATE of Washington, Respondent,
v.
Dean RICHARD, Appellant.
No. 25591-3-III.
Court of Appeals of Washington, Division 3.
April 15, 2008.
*864 David N. Gasch, Gasch Law Office, Spokane, WA, for Petitioner.
Rea Lynn Culwell, Brandie Jonnel Rouse, Columbia County Prosecutor's Office, Dayton, WA, for Respondent.
BROWN, J.
¶ 1 Although Dean Richard's defense was that he thought he had legally shot and killed a three point buck deer, a jury, without making a separate death finding, decided he illegally shot a two point buck and found him guilty of second degree unlawful hunting of big game, a gross misdemeanor under RCW 77.15.410(1). For sole punishment, the trial court imposed the mandatory $2,000 criminal wildlife penalty assessment noted in the charging document that is required under RCW 77.15.420 when wildlife death occurs. Under stipulated facts, including Mr. Richard's admission that he killed the deer, Mr. Richard appealed to the superior court on the basis that the jury should have decided whether his crime resulted in the deer's death under Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).
¶ 2 We affirm because, unlike a beyond-the-standard-range felony exceptional sentence based upon impermissible judicial factfinding, the criminal wildlife penalty assessment was within the ordinary maximum punishment range allowed for this gross *865 misdemeanor. And, even if a jury had been required to make a wildlife death finding, Mr. Richard's stipulated admission that he killed the deer satisfies Blakely.

FACTS
¶ 3 In 2005, Mr. Richard illegally shot a two point buck deer; he believed it was a legal three point buck. After an eyewitness report, wildlife officers Michael Johnson and Ryan John stopped Mr. Richard, who related he was leaving to find help in retrieving the deer he admitted he had shot. The officers could not locate the deer in the dark, but partly cited Mr. Richard with second degree unlawful hunting of big game under RCW 77.15.410(1). Officer Johnson found the deer the next morning. "[T]he deer was still alive . . . but was in shock with multiple gun shot wounds and two broken legs and was dying." Clerk's Papers (CP) at 106. Officer Johnson shot the deer to end its suffering, then severed and photographed the head for evidence. The officer showed the head to Mr. Richard. Mr. Richard "thought it was a two pointer at first, until I walked on the other side. It was three points." CP at 132.
¶ 4 Apparently, Mr. Richard's defense was that he believed he shot and killed a legal three point buck, not an illegal two point buck. The jury resolved the issue for the State and found Mr. Richard guilty as charged under unchallenged instructions. The jury was not instructed to decide if the RCW 77.15.410 violation resulted in the deer's death. The district court at sentencing found Mr. Richard's actions did result in the death of a deer and imposed a $2,000 criminal wildlife penalty assessment under RCW 77.15.420(1)(b). The court imposed no other punishment.
¶ 5 On stipulated facts, Mr. Richard unsuccessfully appealed his sentence to the superior court. The superior court ruled "as a matter of law that but for the defendant injuring the deer, it would have never died," even though the officer "put the animal out of its suffering." CP at 131. The court reasoned a "real facts hearing" was unnecessary and ruled the assessment was "valid and [] enforceable, and was properly imposed under the facts as stipulated." Id. Mr. Richard nevertheless maintained: "The head that was brought in here was not the same head. It was a two point buck." CP at 132. We granted discretionary review for the Blakely question, an issue of first impression.

ANALYSIS
¶ 6 The issue is whether the trial court violated Mr. Richard's sixth amendment right to a jury trial under Blakely in finding, without a jury determination, that his hunting violation under RCW 77.15.410(1) resulted in the death of a deer and imposing the mandatory $2,000 criminal wildlife penalty assessment of RCW 77.15.420(1)(b).
¶ 7 We review constitutional matters de novo. State v. Jones, 159 Wash.2d 231, 237, 149 P.3d 636 (2006). Under the sixth amendment, a defendant has a constitutional right to have a jury find facts that cause criminal punishment to exceed the "`prescribed statutory maximum.'" State v. Kinneman, 155 Wash.2d 272, 277, 119 P.3d 350 (2005) (quoting Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). The "statutory maximum" is "the maximum [punishment] a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Blakely, 542 U.S. at 303, 124 S.Ct. 2531. It "is not the maximum [punishment] a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Id. at 303-04, 124 S.Ct. 2531. "Punishment includes both imprisonment and other criminal sanctions." Kinneman, 155 Wash.2d at 278, 119 P.3d 350 (emphasis added).
¶ 8 In determining whether a statutory penalty is civil or criminal, we engage in statutory construction. United States v. Ward, 448 U.S. 242, 248, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980); Winchester v. Stein, 135 Wash.2d 835, 846, 959 P.2d 1077 (1998). In construing a statute, our objective is to ascertain the legislature's intent. State v. Von Thiele, 47 Wash.App. 558, 562, 736 P.2d 297 (1987). "If the statutory language is plain and unambiguous, th[is] court's inquiry must *866 end, for a statute's meaning must be derived from the wording of the statute itself." Id.
¶ 9 The relevant statute states:
(1) If a person is convicted of violating RCW 77.15.410 and that violation results in the death of wildlife listed in this section, the court shall require payment of the following amounts for each animal killed or possessed. This shall be a criminal wildlife penalty assessment that shall be paid to the clerk of the court and distributed each month to the state treasurer for deposit in the fish and wildlife enforcement reward account created in RCW 77.15.425.
. . . .
(b) Elk, deer, black bear, and cougar ................................. $2,000
. . . .
(5) The criminal wildlife penalty assessment shall be imposed regardless of and in addition to any sentence, fines, or costs otherwise provided for violating any provision of this title. The criminal wildlife penalty assessment shall be included by the court in any pronouncement of sentence and may not be suspended, waived, modified, or deferred in any respect. This section may not be construed to abridge or alter alternative rights of action or remedies in equity or under common law or statutory law, criminal or civil.
RCW 77.15.420(1)(b), (5) (emphasis added).
¶ 10 A violation of the underlying offense (RCW 77.15.410(1)(b)) cited in RCW 77.15.420(1) is a gross misdemeanor, punishable by a maximum of one year imprisonment in the county jail and/or a maximum fine of $5,000. RCW 9.92.020; RCW 77.15.410(3)(a). The mandatory assessment in RCW 77.15.420 is criminal in nature and applies for a conviction under RCW 77.15.410(1), if wildlife death occurs.
¶ 11 Here, the amended citation specifies a violation of RCW 77.15.410(1) is a gross misdemeanor with a maximum penalty of 365 days in jail and a fine of $5,000, plus restitution, assessments and court costs. CP at 28 (emphasis added). It further states, "Mandatory Criminal Wildlife Penalty Assessment if Death of Wildlife Occurred-Pursuant to RCW 77.15.420," showing the $2,000 penalty for killing a deer under RCW 77.15.410. CP at 29 (emphasis added).
¶ 12 However, considering wildlife death may or may not occur when one illegally hunts big game for the $2,000 penalty to apply, RCW 77.15.420 requires the State, at some point, to prove wildlife death resulting from a violation of RCW 77.15.410(1). Wildlife death is not an element of RCW 77.15.410(1). The unchallenged, and thus binding, "to convict" instruction given here included, in addition to time and place, elements requiring proof "the defendant shot a 2-point mule deer buck, and [t]hat there was not at the time an open season to hunt that species[,]" but not that death resulted. CP at 22. Even so, if the fact of wildlife death is contested at trial, a special verdict is permissible good practice. If, as here, the fact of resulting wildlife death is not contested until sentencing, judicial fact-finding is appropriate because the criminal penalty assessment is within the standard maximum punishment for violating RCW 77.15.410(1).
¶ 13 The statutory language in RCW 77.15.420 unambiguously identifies the penalty as a mandatory criminal penalty  "criminal wildlife penalty assessment." RCW 77.15.420(1). The State incorrectly argues the legislature intended the penalty as restitution, citing 1997 Reg. Sess. H.B. 1806. House Bill 1806 addresses amendments to former RCW 77.21.070 (1997) ("restitution" to the State for illegal killing of wildlife), not RCW 77.15.420 (enacted under enforcement code in 1998). The legislature repealed former RCW 77.21.070 in 2000, without recodifying or reenacting it under another section. Laws of 2000, ch. 107, §§ 273-77.
¶ 14 Even if Blakely did apply, the wildlife death was apparently uncontested at trial, likely because it was irrelevant to Mr. Richard's chosen defense. The death fact was later candidly admitted by Mr. Richard in the stipulated facts considered on appeal by the superior court, and maintained by Mr. Richard in open court. In the stipulation, Mr. Richard "admitted he killed a deer" that "he believed was legal;" that the deer Officer *867 Johnson found was "dying" and Officer Johnson "dispatched the buck with his service revolver" to end its suffering. CP at 141-42. Therefore, Blakely would have been satisfied because the superior court reviewed facts "admitted by the defendant." Blakely, 542 U.S. at 303, 124 S.Ct. 2531.
¶ 15 Affirmed.
WE CONCUR: KULIK and THOMPSON, JJ.